1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BRIAN K. BROOKEY, CA Bar No. 149522**
brian.brookey@cph.com
**CHRISTIE, PARKER & HALE, LLP**
**350 West Colorado Boulevard, Suite 500**
**Post Office Box 7068**
**Pasadena, California 91109-7068**
**Telephone: (626) 795-9900**
**Facsimile: (626) 577-8800**

**ROBERT C. FABER** *(pro hac vice)*
rfaber@ostrolenk.com
**PETER S. SLOANE** *(pro hac vice)*
psloane@ostrolenk.com
**OSTROLENK, FABER, GERB & SOFFEN, LLP**
**1180 Avenue of the Americas**
**New York, New York  10036**
**Telephone: (212) 382-0700**
**Facsimile: (212) 382-0888**

Attorneys for Defendant,
INTERSEARCH GROUP, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| INTERSEARCH WORLDWIDE LTD., a United Kingdom Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>INTERSEARCH GROUP, INC., a Florida Corporation,<br><br>Defendant. | Case No. C 07 04634 SBA<br><br>**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>**DATE:**  February 5, 2008<br>**TIME:**   1:00 p.m.<br>**CTRM:**  3<br><br>**Hon. Saundra Brown Armstrong** |

CHRISTIE, PARKER & HALE, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

PAGE(S)

I. INTRODUCTION ............................................................................................. 1

II. STATEMENT OF FACTS ............................................................................... 2

    A. Defendant's Connection to New York ................................................. 2

    B. Third-party Conex Incorporated .......................................................... 2

    C. Plaintiff Intersearch Worldwide ......................................................... 2

    D. Third-party Cook Associates, Incorporated ........................................ 4

III. EXCEPTIONS TO THE FIRST-FILED RULE DO NOT APPLY ................... 4

    A. Defendant's New York Complaint Does Not Fall Within the Anticipatory Filing Exception to the First-Filed Rule ......................... 5

    B. Defendant did not Engage in Forum Shopping .................................... 7

    C. Defendant's New York Complaint Does Not Fall Within the Customer Suit Exception to the First-Filed Rule ................................. 8

IV. THE NEW YORK ACTION IS FIRST-FILED ............................................... 9

V. CONVENIENCE OF THE PARTIES AND JUDICIAL ECONOMY FAVOR DISMISSAL OF THE INSTANT ACTION ...................................... 11

    A. New York is the More Convenient Forum .......................................... 11

    B. The Fact that Plaintiff Raised a Personal Jurisdiction Defense in the New York Action Does Not Preclude Dismissal of the Instant Action ......................... 13

VI. CONCLUSION ............................................................................................ 16

**TABLE OF AUTHORITIES**

PAGE(S)

**CASES**

*Alan Schreiber v. Eli Lilly and Co.*,
No. 05-CV-2616, 2006 U.S. Dist. LEXIS 13477 (E.D. Pa. Mar. 27, 2006) ...................... 9

*Arcade, Inc. v. Minnesota Mining & Manufacturing Co.*,
No. 1:96-cv-359, 1997 U.S. Dist. LEXIS 21687 (E.D. Tenn. June 10, 1007) ............... 8, 9

*British Telecom v. McDonnell Douglas Corp.*,
1993 U.S. Dist. LEXIS 6345 (N.D. Cal. May 3, 1993) ...................................................... 13

*Century 21, Inc. v. Diamond State Insurance Co.*,
442 F.3d 79 (2d Cir. 2006) ................................................................................................ 15

*Church of Scientology of California v. United States Department of Defense*,
611 F.2d 738 (9th Cir. 1979) .............................................................................................. 5

*Citigroup Inc. v. City Holding Co.*,
97 F. Supp. 2d 549 (S.D.N.Y. 2000) ............................................................................. 14, 15

*City of Merced v. Fields*,
997 F. Supp. 1326 (E.D. Cal. 1998) .................................................................................. 10

*Coast to Coast Fabrics, Inc. v. Exact Change Only Corp.*,
No. 04 Civ. 7300, 2006 U.S. Dist. LEXIS 14950 (S.D.N.Y. March 28, 2006) ............... 11

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) ............................................................................................ 11

*Firma Melodiya v. ZYX Music GMBH*,
1995 U.S. Dist. LEXIS 795 (S.D.N.Y.1995) ................................................................. 14, 15

*Foot Locker Retail, Inc. v. SBH, Inc.*,
2005 U.S. Dist. LEXIS 599 (S.D.N.Y. 2005) ................................................................... 13

*Fujitsu Ltd. V. Nanya Tech. Corp., No. C 06-6613*,
2007 U.S. Dist. LEXIS 13132 (N.C. Cal. Feb. 9, 2007) ............................................... 1, 13

*Intuitive Surgical, Inc. v. California Institute of Technology*,
2007 U.S. Dist. LEXIS 31753 (N.D. Cal. April 18, 2007)................................................ 11

*Isle Capital Corp. v. Koch Carbon, LLC*,
No. 06-525, 2006 U.S. Dist. LEXIS 24866 (N.D. Cal. March 28,  2006) ................... 5, 11

*Kelley v. Euromarkiet Designs, Inc., No. Civ. S-07-0232*,
2008 U.S. Dist. LEXIS 1269 (E.D. Cal. Jan. 7, 2008) ....................................................... 7

*M.D. Beauty, Inc. v. Gross*,
No. C03-3082, 2003 U.S. Dist. LEXIS 27257 (N.D. Cal. Oct. 27, 2003) ............... 5, 6, 13

*NSI Corp. v. Showco, Inc.,*
   843 F. Supp. 642 (D. Or. 1994) ........................................................................... 6

*National Foam, Inc. v. Williams Fire & Hazard Control, Inc.,*
   No. 97-3105, 1997 U.S. Dist. LEXIS 16734 (E.D. Pa. Oct. 28, 1997) ........................... 10

*Pacesetter System, Inc. v. Medtronic, Inc.,*
   678 F.2d 93 (9th Cir. 1982) ............................................................................. 4, 11

*Privasys, Inc. v. Visa International, No. C 07-3257,*
   2007 U.S. Dist. LEXIS 86838 (N.D. Cal. Nov. 14, 2007) ......................................... 8, 9

*RJF Holdings III, Inc. v. Refractec, Inc.,*
   No. 03-1600,2003 U.S. Dist. LEXIS 22144 (E.D. Pa. Nov. 24, 2003) ........................... 1, 9

*Rogger Graham v. Fendex Medical X-Ray, Inc.,*
   176 F.R.D. 288 (N.D. Ill. 1997) ......................................................................... 10

*Schering Corp. v. Amgen Inc.,*
   969 F. Supp. 258 (D. Del. 1997) ......................................................................... 10

*Sunward Electronics, Inc. v. McDonald,*
   362 F.3d 17 (2d. Cir. 2004) ............................................................................... 15

*Time Warner Cable, Inc. v. GPNE Corp.,*
   497 F. Supp. 2d 584 (D. Del. 2007) ..................................................................... 7

*USA Scientific, LLC v. Rainin Instrument, LLC, No. C 06-4651,*
   2006 U.S. Dist. LEXIS 85279 (N.D. Cal. Nov. 15, 2006) ......................................... 1, 4

*Woodke v. Dahm,*
   70 F.3d 983 (8th Cir. 1995) .............................................................................. 7

## STATUTES

Fed. R. of Civ. Proc. 15(c)(3) ............................................................................... 9

N.Y. C.P.L.R. 302(a)(1) ............................................................................... 13, 14

N.Y. C.P.L.R. 302(a)(2) ................................................................................... 13

Fed. R. of Civ. Proc. 4(m) ................................................................................ 10

Fed. R. of Civ. Proc. 8 ..................................................................................... 15

Fed. R. of Civ. Proc. 15(c)(2) ............................................................................ 10

Fed. R. of Civ. Proc. 15(c)(3) ............................................................................ 10

I.    **INTRODUCTION**

Plaintiff Intersearch Worldwide Limited, (hereinafter referred to as "Worldwide") opposes Defendant Banks.com's,[1] formerly Intersearch Group, Inc. (hereinafter referred to as "Defendant"), Motion to Dismiss the instant action. See Plaintiff's Opposition to Defendant's Motion to Dismiss (hereinafter referred to as "Memo").  Worldwide claims that judicial economy and the interests of justice mandate denying Defendant's motion.  Toward that end, Worldwide begs this Court to find an exception to the well-settled first-filed rule so that Worldwide's second-filed action can dodge dismissal.  Such an exception is unwarranted.

Contrary to Plaintiff's representations, the Ninth Circuit maintains that the first-filed rule "should not be disregarded lightly."  Worldwide attempts to nullify this well-established rule, arguing that Defendant's filing falls under the "anticipatory filing" and "customer suit" exceptions.  As set forth below, both of these exceptions are inapplicable.  Although Worldwide attempts to dub its later filed action the "first-filed," Defendant's complaint filed in New York is indeed the first-filed action and should be accorded the benefit of being so.

Indeed, judicial economy and interests of justice support dismissal of the instant action. Despite Plaintiff's representations, New York is the more convenient forum for the parties and witnesses involved in this dispute.  Additionally, the mere fact that Plaintiff raised a personal jurisdiction argument in New York does not preclude this Court from dismissing this action so that it may be heard in New York, where it was initially filed.  To the contrary, it is Plaintiff's filing of the instant action that has squandered precious judicial resources and forced duplicative litigation and motion practice.  As such, Defendant requests that this Court grant its Motion to Dismiss.

---

[1] Defendant Intersearch Group, Inc. changed its name to Banks.com on or about November 27, 2007.  The name Intersearch remains the name of Defendant's Corporate Services division and Defendant has acquired significant goodwill in the mark. O'Donnell Decl. ¶ 3.  As a result, Defendant has a continued interest in the name and mark INTERSEARCH.

Deft's Reply to Pltf's Oppos. to Deft's Motion to Dismiss          1
Case No. C 07-4634 SBA

CHRISTIE, PARKER & HALE, LLP

## II.    STATEMENT OF FACTS

### A.    Defendant's Connection to New York

Although it is headquartered in San Francisco, Defendant is also located in New York where it has a second office. O'Donnell Decl. ¶ 6. Plaintiff's New York office, located at 14 Wall Street in Manhattan, is prominently displayed on its web site. O'Donnell Decl. ¶ 7. New York is a critical market for Defendant as a company that assists clients in the financial services industry. O'Donnell Decl. ¶ 8. Defendant services numerous prestigious clients located in New York, including HSBC and Merrill Lynch. O'Donnell Decl. ¶ 9.

### B.    Third-party Conex Incorporated

Defendant operated under the name and mark INTERSEARCH without incident for many years. O'Donnell Decl. ¶ 10. In a March of 2005, however, Defendant received a cease and desist letter from Conex Incorporated ("Conex"), a company located in New York. Id. Conex alleged that Plaintiff infringed Conex' trademark rights in U.S. Registration Nos. 1,125,849, 2,531,787 and 2,346,993 of the mark INTERSEARCH for executive search and human resource services (hereinafter collectively referred to as the "Registrations"). Id.

After brief negotiations with Conex, Defendant purchased Conex' rights to the mark INTERSEARCH and Conex' Registrations of that mark. O'Donnell Decl. ¶ 11. To that end, Conex and Defendant executed a Settlement Agreement in August of 2005 (the "Agreement"). O'Donnell Decl. ¶ 12. Under the Agreement, Conex warranted that it was the sole owner of all right, title and interest in the mark INTERSEARCH in the Registrations. O'Donnell Decl. ¶ 13.

### C.    Plaintiff Intersearch Worldwide

Worldwide is a United Kingdom-based organization of executive search and human resource consultancy firms from other countries. Memo at p. 5. Worldwide promotes its services through the web site at www.intersearch.org. Sloane Decl. ¶ 13, Ex. H ¶ 45. Additionally, Worldwide apparently had a prior business relationship with Conex in the U.S., purportedly concerning the mark INTERSEARCH, which was terminated some time prior to

CHRISTIE, PARKER & HALE, LLP

1  the commencement of the business negotiations between Defendant and Conex in 2005.  Memo

2  at p. 6.

3      Despite having no continuing relationship with Conex, on December 19, 2006,

4  Worldwide sent a cease and desist letter to Defendant demanding, *inter alia,* that Defendant

5  cease using Defendant's name and mark INTERSEARCH for employment related services.

6  O'Donnell Decl. ¶ 18.  Sloane Decl. ¶ 5.  The letter also stated that "an amicable resolution to

7  this situation should be possible."  O'Donnell. ¶ 18.

8      By letter dated December 22, 2006, Defendant's counsel notified Worldwide that

9  Defendant was the true owner of the mark INTERSEARCH and that Worldwide's claims were

10  misplaced.  Supp. Sloane Decl. ¶ 5.  In response, Defendant received a letter on behalf of

11  Worldwide dated March 15, 2007, reiterating Worldwide's position and again stating that

12  Worldwide "may still be willing to discuss an amicable resolution of this matter, if [Defendant]

13  cooperates fully and in a timely manner."  Supp. Sloane Decl. ¶ 6.  The letter concluded that

14  Worldwide would "take whatever steps are necessary to secure [the INTERSEARCH] mark in

15  the United States."  Id.

16      On May 3, 2007, with the dispute still unresolved and unsure if and when Worldwide

17  was going to institute suit, Defendant filed an action in the United States District Court for the

18  Southern District of New York seeking judicial assistance in declaring the rights of the

19  respective parties to the mark INTERSEARCH (hereinafter referred to as the "New York

20  Action").  Bogatay Decl. ¶ 11; Sloane Decl. ¶ 6.  Defendant refrained from serving the

21  Complaint in the New York Action while the parties continued to discuss settlement.

22  O'Donnell Decl. ¶ 25.

23      On June 26, 2007, Worldwide's attorneys sent a letter to the attorneys for Defendant

24  advising that Worldwide had become aware of the New York Action.  Sloane Decl. ¶ 8.

25      On June 29, 2007, with the dispute still not settled, and concerned about the 120-day

26  date to serve process in the New York Action approaching, the attorneys for Defendant asked

27  the attorneys for Worldwide to accept service of the Summons and Complaint in the New York

28  Deft's Reply to Pltf's Oppos. to Deft's Motion to Dismiss    3
   Case No. C 07-4634 SBA

CHRISTIE, PARKER & HALE, LLP

1    Action on behalf of Worldwide.  Sloane Decl. ¶ 9.  By letter dated July 10, 2007, without

2    explanation, the attorneys for Worldwide refused to do so.  Id.  Defendant subsequently served

3    process under the Hague Convention.  Sloane Decl. ¶ 10.

4         On September 6, 2007, without prior notice to Defendant, four months after the New

5    York Action was filed and over two months after Worldwide was aware of the New York

6    Action, Worldwide filed the instant action (hereinafter referred to as the "California Action").

7    Sloane Decl. ¶ 11.  Worldwide served the Complaint in the California Action by hand upon

8    Defendant on September 7, 2007.  Id.

9        **D.    Third-party Cook Associates, Incorporated**

10        Worldwide apparently uses the mark INTERSEARCH in the U.S. for executive search

11   services through its new licensee, Cook. See Supp. Sloane Decl. ¶ 18.  Worldwide identifies

12   Cook as its U.S. location on its Internet web site at www.intersearch.org.  Supp. Sloane Decl. ¶

13   9. Worldwide further identifies New York as the second of its seven U.S. locations.  Id.  Cook,

14   in turn, presently holds itself out as the exclusive U.S. representative of Worldwide on its

15   Internet web site at www.cookassociates.com.  Supp. Sloane Decl. ¶ 10.  Cook has an office

16   within the Southern District of New York.  Memo at p. 5.

17        On September 21, 2007, Defendant filed its First Amended Complaint to add Cook as a

18   co-defendant in the New York Action (hereinafter referred to as the "Amended Complaint").

19   Sloane Decl. ¶ 13.  The Amended Complaint also seeks monetary damages and injunctive relief

20   preventing Worldwide and Cook from using the mark INTERSEARCH in the U.S.

21   **III.    EXCEPTIONS TO THE FIRST-FILED RULE DO NOT APPLY**

22        Defendant was the first to file its action in New York concerning rights in the trademark

23   INTERSEARCH, about four months before Worldwide filed a competing action in this

24   District.  As a result, Defendant is entitled to the benefit of the long-established and well-

25   respected first to file rule. Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir.

26   1982); USA Scientific, LLC v. Rainin Instrument, LLC, No. C 06-4651, 2006 U.S. Dist.

27   LEXIS 85279, at *3 (N.D. Cal. Nov. 15, 2006) (J. Armstrong) (noting that the first-filed action

28

CHRISTIE, PARKER & HALE, LLP

1    is generally preferred). This is especially true in the Ninth Circuit where the first filed rule

2    "should not be disregarded lightly." Church of Scientology of California v. United States Dep't

3    of Defense, 611 F.2d 738, 750 (9th Cir. 1979). Worldwide endeavors to override this well-

4    established doctrine, arguing that Defendant's filing falls under both the "anticipatory filing"

5    and "customer suit" exceptions. As is set forth below, Plaintiff's arguments have no merit.

6          A.   **Defendant's New York Complaint Does Not Fall Within the Anticipatory**

7              **Filing Exception to the First-Filed Rule**

8          Worldwide approached Defendant in December 2006 claiming it was the owner of the

9    mark INTERSEARCH. O'Donnell Decl. ¶ 18. The December 19, 2006 objection letter from

10   Worldwide's counsel requested that Defendant cease using its name and mark, but stated that

11   "an amicable resolution to this situation should be possible." Id. By letter dated December 22,

12   2006, Defendant's counsel notified Worldwide that Defendant was the true owner of the mark

13   INTERSEARCH and that Worldwide's claims were misplaced. Supp. Sloane Decl. ¶ 5.

14   Worldwide's attorneys responded via a March 15, 2007 letter, and again stated that Worldwide

15   "may still be willing to discuss an amicable resolution of this matter, if [Defendant] cooperates

16   fully and in a timely manner." Supp. Sloane Dec. ¶ 6. The letter added that Worldwide would

17   "take whatever steps are necessary to secure [the INTERSEARCH] mark in the United States."

18   Id.

19         Indeed, there is no requirement that a business threatened with the possibility of an

20   infringement lawsuit wait to be served. M.D. Beauty, Inc. v. Gross, No. C03-3082, 2003 U.S.

21   Dist. LEXIS 27257, at *8 (N.D. Cal. Oct. 27, 2003) (J. Armstrong) (explaining that a key

22   purpose of the Declaratory Judgment Act is to "alleviate the necessity of waiting indefinitely

23   for a [party] to file an infringement action"). On the contrary, a party with a "reasonable

24   apprehension of suit" may file a declaratory judgment action, and such filing is not considered

25   anticipatory. Id. at 10 (holding that a first-filed action will only be considered anticipatory

26   where that party had "concrete indications" that a suit was "imminent"); Isle Capital Corp. v.

27   Koch Carbon, LLC, No. 06-525, 2006 U.S. Dist. LEXIS 24866, at *11 (N.D. Cal. March 28,

28

CHRISTIE, PARKER & HALE, LLP

1    2006) (finding a lack of evidence that the opposing party had imminent plans to file an action).

2    Based on Worldwide's communications, Defendant had a reasonable apprehension of

3    suit by Worldwide, but such a suit was by no means imminent. See M.D. Beauty, 2003 U.S.

4    Dist. LEXIS 27257, at *12-16 (J. Armstrong) (discussing the bases for the defendant's

5    reasonable apprehension of suit and holding its declaratory judgment action was not

6    anticipatory). First, both of Worldwide's letters ended with invitations to resolve the matter

7    amicably. Supp. Sloane Decl. ¶¶ 5-6. Second, Worldwide's March 15, 2007 letter came nearly

8    two months after Defendant's response to Worldwide's December 19, 2007 letter. Supp.

9    Sloane Dec. ¶ 6. Third, Worldwide's March 15, 2007 letter vaguely states that it will "take

10   whatever steps are necessary to secure" the INTERSEARCH mark but does not list litigation as

11   its next course of action. Id. Finally, Defendant's position is supported by the fact that

12   Worldwide did not actually file the Complaint in the instant action until four months after

13   Defendant filed the New York Action, and over two months after Worldwide became aware of

14   the New York Action. Sloane Dec. ¶ 11. Notably, Worldwide did not move to dismiss or

15   transfer the New York Action until after it filed its own action before this Court. Sloane Dec. ¶

16   7.

17   Plaintiff asserts that Defendant filed the original declaratory judgment action in New

18   York while Defendant and Worldwide were discussing settlement. Memo at pp. 15-16.

19   However, those settlement discussions had failed over many months, and Defendant was

20   increasingly apprehensive about its business plans under the mark in question. Bogatay Decl. ¶

21   11. NSI Corp. v. Showco, Inc., 843 F. Supp. 642 (D. Or. 1994), a case cited by Plaintiff

22   (Memo at pp. 15-16) is inapposite. In NSI, the plaintiff had admitted that it was the fear of suit

23   in an inconvenient forum, and not defendant's delay in responding to a settlement offer, that

24   prompted plaintiff to file its declaratory judgment suit. Here, it was not Defendant's fear of

25   being sued in an inconvenient forum that drove it to file the original complaint, but rather the

26   delay in achieving settlement and the continuing apprehension to use the INTERSEARCH

27   mark. Bogatay Decl. ¶ 11.

28

1     Plaintiffs fret that allowing this action to move forward will encourage trademark

2  owners to file suit first, rather than to try to negotiate settlement. Memo at p. 15. But that is a

3  reasonable risk faced by a trademark owner when it sends cease and desist letters.

4  Furthermore, just because a party initiates litigation does not mean that it cannot also

5  simultaneously pursue settlement discussions in good faith. <u>See generally</u> <u>Kelley v.</u>

6  <u>Euromarkiet Designs, Inc.</u>, No. Civ. S-07-0232, 2008 U.S. Dist. LEXIS 1269, at *2 (E.D. Cal.

7  Jan. 7, 2008) (stating that the parties engaged in settlement negotiations during the action).

8  Defendant initially tried to settle the dispute with Worldwide and continued those settlement

9  discussions in good faith long after filing the New York action. O'Donnell Decl. ¶ 25. To this

10  day, the parties continue to attempt to settle their differences. O'Donnell Decl. ¶ 26.

11  Unfortunately, the parties have not yet reached settlement. <u>Id</u>.

12     **B.**    **<u>Defendant did not Engage in Forum Shopping</u>**

13     Worldwide incorrectly alleges that Defendant engaged in forum shopping by filing the

14  New York Action. Memo p. 16. Contrarily, Defendant intentionally chose not to file in

15  California due, in part, to concern that Plaintiff, located in the United Kingdom, would

16  challenge personal jurisdiction on the West Coast. <u>See</u> <u>Woodke v. Dahm</u>, 70 F.3d 983, 985

17  (8th Cir. 1995) (affirming the district court's dismissal of a trademark infringement action

18  because plaintiff improperly brought the action in its home forum). Defendant filed the New

19  York Action because all the parties are subject to jurisdiction there and, as discussed <u>infra</u>, New

20  York is the most convenient forum. <u>Id.</u> Further, as between Worldwide in the U.K. and

21  Defendant in California, New York lies equidistant between the two and is geographically

22  closer to the U.K.

23     Plaintiff has not alleged that Second Circuit law would somehow be more favorable to

24  Defendant. Plaintiff sets forth no reasonable motivation for Defendant's alleged forum-

25  shopping. In fact, given the below convenience circumstances and the fact that the New York

26  Action was the first filed, it is apparent that it is <u>Plaintiff</u> who is forum shopping. <u>See</u> <u>Time</u>

27  <u>Warner Cable, Inc. v. GPNE Corp.</u>, 497 F. Supp. 2d 584, 590 (D. Del. 2007). By the same

28

token, it is unclear why Plaintiff is pushing for trial in this District, where it does not have an office or, to Defendant's knowledge, any commercial presence. Indeed, Plaintiff has never explained why it is subject to personal jurisdiction in California.

### C. Defendant's New York Complaint Does Not Fall Within the Customer Suit Exception to the First-Filed Rule

Plaintiff speculates that Defendant's Amended Complaint in the New York Action added Cook as an attempt to gain personal jurisdiction over Worldwide and thus perfect its alleged forum-shopping plan. Memo. at p. 9. To the contrary, Defendant added Cook because Defendant learned that Cook had received an exclusive license from Worldwide to use the mark INTERSEARCH in the U.S., (Supp. Sloane Decl. ¶ 9) and any such use infringes on Defendant's trademark rights. Defendant added Cook, in part, to provide complete relief to Defendant's trademark rights when a final declaration of rights is determined. The fact that Cook has an office in New York only reinforces jurisdiction in New York.

Aside from its conclusory misrepresentations that Cook was improperly added, Plaintiff labels Defendant's Amended Complaint as one with "customer-type claims," and thus, an exception to the first-filed rule. Memo. at p. 16. Plaintiff misapprehends the parameters of the exception and baselessly assumes that a licensee is a "customer" of a licensor. Traditionally a "customer" purchases a product from another party, such as from a manufacturer or retailer. Cook does not qualify as a "customer" because, as an exclusive licensee, Cook has an interest in the subject of the license. See generally Arcade, Inc. v. Minnesota Mining & Mfg. Co., No. 1:96-cv-359, 1997 U.S. Dist LEXIS 21687, at *8 (E.D. Tenn. June 10, 1007) (explaining that an exclusive licensee possess a proprietary interest).

Further, Plaintiff has the customer suit exception backwards. A customer type suit is where the first-filed suit is against a customer, or alleged infringer, while the second suit is against the infringer itself in a different district. Privasys, Inc. v. Visa Int'l, No. C 07-3257, 2007 U.S. Dist. LEXIS 86838, at *9-11 (N.D. Cal. Nov. 14, 2007). Here, Defendant filed against Worldwide in its original Complaint and subsequently added Cook, i.e. the alleged customer, in the Amended Complaint in the same district. Defendant filed an action and

properly alleged personal jurisdiction over Worldwide well prior to Defendant's amendment to add Cook as a co-party. Such a scenario does not even remotely implicate the customer suit exception. Id. ("Where, as here, the plaintiff has brought suit against both the supplier and its customers in the same suit and in the same district, the 'customer suit' exception does not apply.").

Worldwide erroneously promotes the "real" dispute as between only Worldwide and Defendant. Memo at 16. When it became clear that Defendant and Worldwide were unable to settle their dispute, and Worldwide intended to use the mark INTERSEARCH in the U.S. through Cook, Defendant was entitled to amend its original Complaint and add the intended user of the mark in the U.S. as a party to this action. Moreover, instead of just seeking declaratory relief from the Court, Defendant decided to also seek affirmative injunctive relief from the Court. Sloane Decl. ¶ 13. As a result, the Amended Complaint seeks more than just a declaration of ownership as between Defendant and Worldwide. As the intended licensee of the mark in dispute and the party that plans to commercialize the mark in the U.S., Cook is hardly an innocent bystander in this action. See generally Arcade, Inc., 1997 U.S. Dist LEXIS 21687, at *8 (explaining that a licensee possess a proprietary interest).

As indicated above, Plaintiff's rationale for continuing this action in lieu of the first-filed action must fail. The exceptions to the first-filed rule do not apply here and thus, Defendant's motion to dismiss the Complaint in the instant action should be granted.

## IV.    THE NEW YORK ACTION IS FIRST-FILED

Defendant disagrees with Worldwide that its amendment to the Complaint in New York subjects it to an analysis under Federal Rule of Civil Procedure 15(c)(3). Defendant's mere amendment to the New York Compliant, which was filed first chronologically, does not vitiate its stature as the first-filed complaint. See RJF Holdings III, Inc. v. Refractec, Inc., No. 03-1600,2003 U.S. Dist. LEXIS 22144, at *5-6 (E.D. Pa. Nov. 24, 2003) (explaining that adding a party to the first-filed complaint "does not affect its status as the first-filed action"); Alan Schreiber v. Eli Lilly and Co., No. 05-CV-2616, 2006 U.S. Dist. LEXIS 13477, *8 (E.D. Pa. Mar. 27, 2006) ("The first-filed rule turns on which court first obtains possession of the subject

1    of the dispute, not the parties of the dispute."); Schering Corp. v. Amgen Inc., 969 F. Supp.

2    258, 267 (D. Del. 1997) (holding that a relation back analysis is "misdirected" since "an action

3    is considered first-filed, regardless of the addition of a new party").

4         However, to the extent an inquiry into the requirements of Rule 15(c)(3) is necessary in

5    conjunction with the first-filed rule, Defendant meets those requirements. Worldwide glosses

6    over the fact that the claims alleged in Defendant's New York Complaint and Amended

7    Complaint arise from the same conduct, transaction or occurrence, as is required under Rule

8    15(c)(2). Memo p. 10. Defendant's original Complaint and Amended Complaint, which adds

9    trademark infringement claims, both relate to the use and ownership of the mark

10   INTERSEARCH. Further evidence that the added claims are related is that the witnesses and

11   evidence relied upon by both parties will undoubtedly be the same.

12        Additionally, Cook, as Worldwide's exclusive U.S. licensee, must have had notice of

13   the New York Action. See Nat'l Foam, Inc. v. Williams Fire & Hazard Control, Inc., No. 97-

14   3105, 1997 U.S. Dist. LEXIS 16734, at *14 (E.D. Pa. Oct. 28, 1997) (holding that it was

15   "highly probably if not certain" that both parties to a license agreement would be aware of the

16   action involving the intellectual property). Moreover, "[n]otice may be imputed to proposed

17   new parties when the original and added parties are so closely related in business or other

18   activities that it is fair to presume the added parties learned of the institution of the action

19   shortly after it was commenced." Id.

20        Finally, the 120-day period prescribed by Rule 4(m) begins to run as to a newly-named

21   defendant when that defendant is first named in the Amended Complaint. See Rogger Graham

22   v. Fendex Med. X-Ray, Inc., 176 F.R.D. 288, 290 (N.D. Ill. 1997). Under Worldwide's

23   misapplied interpretation, the amending party must amend its complaint within the 120-day

24   period beginning from the original filing, lest the amending party lose its priority of being the

25   first-filed action. See generally City of Merced v. Fields, 997 F. Supp. 1326, 1338 (E.D. Cal.

26   1998). Such a rigid interpretation would allow second-suit filers to swoop in and disturb the

27   first-filed rule once the first-filer amends its Complaint. Surely, the Rule was not intended to

28   

CHRISTIE, PARKER & HALE, LLP

1    breed such inequity.

2    **V.    CONVENIENCE OF THE PARTIES AND JUDICIAL ECONOMY FAVOR**

3    **DISMISSAL OF THE INSTANT ACTION**

4        **A.    New York is the More Convenient Forum**

5        The overwhelming case law in this Circuit directs that arguments of convenience of the

6    parties and witness should usually be addressed in the court of the first-filed action.  See e.g.,

7    Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 96 (9th Cir. 1982); Intuitive Surgical, Inc.

8    v. California Institute of Technology, 2007 U.S. Dist. LEXIS 31753, at *7 (N.D. Cal. April 18,

9    2007); Isle Capital Corp. v. Koch Carbon, LLC, No. 06-525, 2006 U.S. Dist. LEXIS 24866, at

10    *13 (N.D. Cal. March 28, 2006).

11        However, if this Court reviews the convenience of the forum, Defendant contends that

12    Plaintiff's allegations that California is a more convenient forum than New York are simply

13    unfounded.  New York is convenient for the parties and witnesses, and should be accorded

14    deference as Defendant's choice of forum.  Decker Coal Co. v. Commonwealth Edison Co.,

15    805 F.2d 834, 843 (9th Cir. 1986) (defendant must make a strong showing of inconvenience to

16    warrant upsetting plaintiff's choice of forum.)  Indeed, Plaintiff has failed to articulate why

17    California, located even farther away from the U.K. than New York, is more convenient.

18        Despite its submissions, Worldwide never claims that it does not do business in New

19    York, or that it would be inconvenienced or prejudiced by litigating in New York as opposed to

20    California.  To the contrary, for reasons still unknown, Worldwide argues that Defendant's

21    chosen forum of New York is inappropriate because litigating in California would be more

22    convenient to Defendant (where its corporate headquarters are located) as opposed to the

23    Plaintiff (who has no apparent presence in California whatsoever). Memo at p. 16. See Coast

24    to Coast Fabrics, Inc. v. Exact Change Only Corp., No. 04 Civ. 7300, 2006 U.S. Dist. LEXIS

25    14950, at *14 (S.D.N.Y. March 28, 2006) (explaining that "one party's residence in a chosen

26    forum, without more connecting a case to that forum, is insufficient to keep a case in that

27    forum").  Defendant respectfully submits that it is in much better a position then Plaintiff to

28

1    evaluate and manage its own convenience in this action.

2         New York is equally convenient to third party Conex, who will no doubt be a witness in

3    this case, as it is to Defendant.  Supp. Sloane Decl. ¶ 4.  There is no need to force Conex, a

4    company located in New York, to travel across the country to appear as a witness at trial.

5    Defendants would have Conex do just that by transferring the case to California.

6         New York is also a more convenient jurisdiction for Plaintiff's licensee Cook.  Even if

7    Worldwide's contentions that the individual witnesses from Cook are located in Chicago are

8    true, it does not negate the fact that Cook has an office and does business in New York.  This

9    fact alone ought to make New York a more convenient forum for Cook than California.

10        Plaintiff's claim that California has a more "substantial connection" to this dispute than

11   New York is fallacious.  Memo at p. 16.  Apart from the fact that Defendant has its main office

12   in California, no other connections with this state relevant to the instant dispute have been

13   established.  The so-called "California Agreement" is between Defendant and Conex, who is

14   not a party to this action, and merely refers to California in a choice of law provision.  Memo at

15   p. 6.  This action does not arise out of that agreement and it is simply irrelevant in determining

16   the appropriate forum here.  Furthermore, Plaintiff's allegation that California is more

17   substantially connected to this trademark dispute than New York demonstrates a fundamental

18   misappreciation of Defendant's business.  Some of Defendant's most well-known financial

19   clients are located in New York.  O'Donnell Decl. ¶ 9.

20        Furthermore, it is disingenuous for Plaintiff to argue that judicial economy favors the

21   California Action.  Memo at p. 11.  If Plaintiff was at all concerned with judicial economy it

22   should have moved to dismiss the New York Action before taking the time and expense to file

23   this second competing action in California, effectively squandering judicial resources.[2]

24   _____

25   [2]  Plaintiff states that it filed the instant action without knowledge that Plaintiff had served the
     declaratory judgment Complaint in the New York Action.  Memo at. P. 2.  Actual service of

26   process is not the issue.  More than two and a half months earlier, counsel for Worldwide knew
     about the New York Action, which it declined to accept service of the Complaint therein.

27   Memo at p. 7.  Worldwide knew that Defendant would have no choice but to effect service
     under the Hague Convention prior to the 120-service deadline.  Service in the U.K. could

28

1    Plaintiff has failed to show that this forum is more convenient then New York or even

2    why convenience of the parties should disturb Defendant's original choice of forum.  As such

3    Defendant's motion to dismiss should be granted.

4    **B.    The Fact that Plaintiff Raised a Personal Jurisdiction Defense in the New**

5    **York Action Does Not Preclude Dismissal of the Instant Action**

6    Defendant is uncertain why Plaintiff expends approximately four pages attempting to

7    convince this Court that Worldwide is not subject to personal jurisdiction in New York.

8    Memo, pp. 11-15.  The question of whether New York has personal jurisdiction over Plaintiff

9    in the New York Action under New York law is one to be decided by the New York court.

10   Fujitsu Ltd. V. Nanya Tech. Corp., No. C 06-6613, 2007 U.S. Dist. LEXIS 13132, at *10 (N.C.

11   Cal. Feb. 9, 2007).  Furthermore, the mere fact that Plaintiff raised a personal jurisdiction

12   objection in the New York Action does not preclude this Court from applying the first-filed

13   rule and dismissing the instant action.  See M.D. Beauty, Inc. v. Gross, 2003 U.S. Dist. LEXIS

14   27257, at *15-16 (J. Armstrong).  As this Court notes, "it would be presumptuous for this

15   [C]ourt to decline to apply the first-to file rule when the court whose jurisdiction is being

16   challenged has not had the opportunity to fully consider the issue." Id. (citing British Telecom

17   v. McDonnell Douglas Corp., 1993 U.S. Dist. LEXIS 6345 (N.D. Cal. May 3, 1993)

18   (dismissing the second-filed action regardless of personal jurisdiction objections raised in the

19   first-filed action).

20   Regardless of the above, Worldwide is subject to personal jurisdiction in New York and

21   Defendant has made the proper showing to the Southern District of New York.[3]  In its original

22   and Amended Complaint, Defendant alleged that Plaintiff has transacted business in New

23   York.[4]  Sloane Decl. ¶ 13, Ex. H ¶ 4.  Section 302(a)(1) confers jurisdiction upon a defendant

24   _____

hardly have come as a surprise.

25   [3] To the extent the New York court finds that Defendant made less then the required showing

26   of personal jurisdiction over Plaintiff, Defendant has requested the opportunity to take limited
     jurisdictional discovery.

27   [4]  Defendant also argues that Plaintiff's infringement of Defendant's name and mark
     INTERSEARCH subjects it to personal jurisdiction under Section 302(a)(2) of New York's

28

1    who has contracted anywhere to supply goods or services within New York.  N.Y. C.P.L.R. §

2    302(a)(1).  A defendant is subject to personal jurisdiction in New York if it purposefully avails

3    itself of the privilege of conducting activities within New York, thus invoking the benefits and

4    protections of its laws.  Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 564 (S.D.N.Y.

5    2000).

6        Third-party Cook admits on its Internet web site at www.cookassociates.com that it

7    "serves as the exclusive U.S. partner for [Worldwide]."  Supp. Sloane Decl. ¶ 10.  Cook, as the

8    exclusive licensee, is acting on Worldwide's behalf in the U.S., including in New York.  See

9    Firma Melodiya v. ZYX Music GMBH, 1995 U.S. Dist. LEXIS 795, at *6 (S.D.N.Y.1995)

10   (stating that the defendant licensee appeared to be acting as foreign licensor's agent pursuant to

11   a contract that allowed the licensee to exploit the subject intellectual property "in the United

12   States").

13       In its Amended Complaint filed in New York, Defendant alleges that Worldwide's

14   license with Cook relates to Cook's use of the mark INTERSEARCH in the U.S. for executive

15   services and human resource consulting.  Sloane Decl. ¶ 13, Ex. H ¶ 57.  By entering into the

16   license agreement with Cook, who is undeniably present in New York, as it maintains an office

17   in Manhattan, Worldwide purposefully availed itself to the laws and protections of New York.

18   Firma Melodiya, 1995 U.S. Dist. LEXIS 795, at *8-9 (holding that the defendant purposefully

19   availed itself to the benefits of doing business in New York by entering into a contract that

20   contemplated the sale of allegedly infringing products in New York).

21       Worldwide is subject to personal jurisdiction in New York based upon the contacts with

22   and conduct of its exclusive licensee, Cook.  See Sloane Decl. ¶ 13 Ex. H ¶.  A licensor of a

23   ─────────────────────

24   long-arm statute.  A foreign defendant will be subject to jurisdiction in New York State if it
     commits a tortious act within New York and the cause of action arises from that act.  See N.Y.

25   C.P.L.R. 302(a)(2).    Here, Worldwide is infringing on Defendant's name and mark
     INTERSEARCH in New York by offering services in that state through its exclusive licensee,

26   Cook.  See Foot Locker Retail, Inc. v. SBH, Inc., 2005 U.S. Dist. LEXIS 599, at 12 (S.D.N.Y.
     2005) (finding that the defendant's licensing of a trademark to a New York competitor of the

27   plaintiff's would likely harm the plaintiff in New York by confusing potential New York
     customers).

28   Deft's Reply to Pltf's Oppos. to Deft's Motion to Dismiss        14
     Case No. C 07-4634 SBA

1    trademark which is exploited by a licensee within New York is subject to personal jurisdiction

2    in an action involving the licensed trademark.  Firma Melodiya, 1995 U.S. Dist. LEXIS 795, at

3    *8-9 (S.D.N.Y.1995); Citigroup, 97 F. Supp. 2d at 566 (exercising jurisdiction over a defendant

4    licensor where its licensee infringed on plaintiff's trademark in New York).

5        Additionally, Worldwide was undoubtedly aware that Cook would use the mark

6    INTERSEARCH in New York, especially because Cook maintains an office in New York, an

7    office that Worldwide itself lists on its very own web site.  Supp. Sloane ¶ 9; Citigroup, 97 F.

8    Supp. 2d at 566 (indicating that the licensor is subject to personal jurisdiction where it can

9    foresee use of the trademark in New York); see also Firma Melodiya, 1995 U.S. Dist. LEXIS

10   795, at *8-9 (finding that, although the license agreement did not specifically reference New

11   York, defendants must have contemplated marketing the infringing goods in New York).

12       Through its exclusive licensee, Worldwide transacts business in New York because

13   Cook uses the mark INTERSEARCH in New York.  Furthermore, the instant action arises out

14   of that business activity because Defendant has filed affirmative trademark infringement claims

15   in New York, in addition to its declaratory judgment claims, based upon Worldwide and

16   Cook's unauthorized use of Defendant's name and mark INTERSEARCH.    See Sunward

17   Electronics, Inc. v. McDonald, 362 F.3d 17, 23-24 (2d. Cir. 2004) (holding that the plaintiff's

18   infringement claims arose from Defendant's business activities related to the use of the subject

19   trademark).

20       Plaintiff argues that Defendant failed to set forth any specific allegations of any New

21   York activities by Worldwide.  Memo at 6.  Notice pleading did not require Plaintiff to allege

22   its claims with any great specificity.  Century 21, Inc. v. Diamond State Ins. Co., 442 F.3d 79,

23   83 (2d Cir. 2006) ("The simplified pleading standard of Rule 8 of the Federal Rules of Civil

24   Procedure requires only a short and plain statement of the claim showing that the pleader is

25   entitled to relief.").   If Plaintiff thought that the pleadings in the New York Action were

26   deficient, it should have moved for dismissal or a more definite statement.

27

28

1    **VI.    CONCLUSION**

2        For the reasons stated above, and for those in its moving papers, Defendant continues to

3    respectfully request that this Court grant its Motion to Dismiss so that the dispute may be heard

4    in New York where it was originally filed.

5

6    DATED:  January 22, 2008                    Respectfully submitted,

7                                               CHRISTIE, PARKER & HALE, LLP

8

9                                               By ___/s/ Brian K. Brookey_____

10                                                  Attorneys for Defendant,
                                                    INTERSEARCH GROUP, INC.

11

12   SCL PAS775177.1-*-01/22/08 3:03 PM

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Def's Reply to Pltf's Oppos. to Def's Motion to Dismiss          16
     Case No. C 07-4634 SBA

CHRISTIE, PARKER & HALE, LLP

# CERTIFICATE OF SERVICE

I certify that on January 22, 2008, I electronically filed the document described as **DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** with the Clerk of the Court using the ECF system which will send notification of such filing to the parties.  I further certify that I have mailed a true copy of the above document via U.S. Mail to the non-ECF participants addressed as follows:

Robert C. Faber
Ostrolenk Faber Gerb & Soffen LLP
1180 Avenue of the Americas
New York, NY 10036

Angela M. Martucci
Ostrolenk Faber Gerb & Soffen, LLP
1180 Avenue of the Americas
New York, NY 10036

Peter Sloane
Ostrolenk Faber Gerb & Soffen LLP
1180 Avenue of the Americas
New York, NY 10036

/s/ _____
Susan Lovelace