1  BRIAN K. BROOKEY, CA Bar No. 149522
   brian.brookey@cph.com
2  CHRISTIE, PARKER & HALE, LLP
   350 West Colorado Boulevard, Suite 500
3  Post Office Box 7068
   Pasadena, California 91109-7068
4  Telephone: (626) 795-9900
   Facsimile: (626) 577-8800
5
6  ROBERT FABER
   Rfaber@ostrolenk.com
7  PETER S. SLOANE
   psloane@ostrolenk.com
8  OSTROLENK, FABER, GERB & SOFFEN, LLP
   1180 Avenue of the Americas
9  New York, New York 10036
   Telephone:  (212) 382-0700
10 Facsimile:  (212) 382-0888

11 Attorneys for Defendant

12

13                    UNITED STATES DISTRICT COURT

14                 NORTHERN DISTRICT OF CALIFORNIA

15                      SAN FRANCISCO DIVISION

16

17 INTERSEARCH WORLDWIDE LTD, a        Case No. 07 4634 SBA
   United Kingdom Corporation,
18                                     DECLARATION OF DANIEL
              Plaintiffs,              O'DONNELL IN SUPPORT OF
19                                     DEFENDANT'S REPLY TO
        vs.                            PLAINTIFF'S OPPOSITION TO
20                                     DEFENDANT'S MOTION TO DISMISS
   INTERSEARCH GROUP, INC., a Florida
21 Corporation
                                       Date:      February 5, 2008
22            Defendants.              Time:      1:00 pm
                                       Ctrm:      3
23
                                       Hon. Saundra Brown Armstrong
24

25

26

27

28

{00900573.1}

-1-

I, Daniel O'Donnell, hereby declare as follows:

1.       I am the President, Chairman and Chief Executive Officer of Banks.com, formerly known as, Intersearch Group, Inc. ("Defendant") in the above-captioned matter.

2.       I submit this declaration upon my personal familiarity with the facts and papers in this matter and in support of Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss.

3.       Defendant recently changed its name to Banks.com on or about November 27, 2007. The name Interserach remains the name of Defendant's Corporate Services division and Defendant has acquired significant goodwill in the name and mark INTERSEARCH.

4.       Defendant is headquartered in San Francisco. However, we have a second office located in New York. San Francisco and New York are the only two locations where we have offices.

5.       Our New York office is located at 14 Wall Street in Manhattan. It is prominently listed on our Internet web site. A printout is attached as Exhibit A. The New York office is extremely important to the identity of Defendant.

6.       New York is a critical market for Defendant and its InterSearch Corporate Services division. As a company that assists clients in the financial services industry, New York is naturally a leading market for our consulting and recruiting services.

7.       Indeed, Defendant services numerous well-known clients located in New York and neighboring counties, including ADP, HSBC, Merrill Lynch and Nomura Securities. Other New York-based clients include M&T, Pica 9, Stone Harbor, John A. Levin and InteriData. Defendant worked with InteriData to place candidates at the insurance firm AIG.

8.       Defendant has operated under the name and mark INTERSEARCH without incident for many years. In a March of 2005, however, we received a "cease and desist letter" from a company named Conex Incorporated ("Conex"), having a place of business on Madison Avenue in Manhattan. A copy of the letter is attached as Exhibit B. In the letter, Conex alleged that we infringed Conex' trademark rights in U.S. Registration Nos. 1,125,849, 2,531,787 and 2,346,993 for the mark INTERSEARCH for executive search and human resource services

{00900573.1}

(hereinafter collectively referred to as the "Registrations").

9.     Following our receipt of the cease and desist letter, Defendant and Conex discussed their dispute.  After brief negotiations, we purchased Conex' rights to the mark INTERSEARCH.

10.    In settlement of the dispute, Defendant and Conex executed a Settlement Agreement in August of 2005 (the "Settlement Agreement").  A copy of the Agreement is attached as Exhibit C.

11.    Under the Settlement Agreement, Conex represented that it was the sole owner of all right, title and interest in and to the trademark INTERSEARCH in the Registrations. Conex also agreed to transfer the mark and Registrations to Defendant.   Transfer was accomplished by execution of the Deed of Assignment attached as an exhibit to the Settlement Agreement.

12.    In December of 2006, we received an objection letter from a company named InterSearch Worldwide Limited ("Worldwide"), Plaintiff in this action.  Worldwide demanded, among other things, that we cease using our mark INTERSEARCH for our employment related services.  A copy of the letter is attached as Exhibit D.  The letter stated, in part, that "an amicable resolution to this situation should be possible."

13.    In March of 2007, the attorneys for Worldwide sent a further letter to our attorneys continuing to argue their meritless position.  The letter concluded by stating that Worldwide would "take whatever steps are necessary to secure its mark in the United States."

14.    Defendant and Worldwide engaged in settlement discussions during the month of April.  However, we were unsuccessful in resolving the dispute.

15.    We chose to file the lawsuit against Worldwide for a declaration of non-infringement in New York, in part, because we have an office there and we thought that it would be the most convenient forum for the parties to litigate their dispute.  Since Conex, the assignor of the Registrations, who is also Worldwide's former licensee, was located in New York, we did not think that Worldwide would protest jurisdiction.

16.    We were concerned that filing a civil action in California would prompt

{00900573.1}

-3-

1    Worldwide, which is not a United States corporation, to object that the court there had no

2    jurisdiction over it. We had no reason at the time to believe that Worldwide had any offices or

3    other business dealings in California.

4        17.    Despite filing the lawsuit, we continued in our good faith efforts to try to settle

5    the dispute with Worldwide. Consequently, we had our attorneys refrain from serving

6    Worldwide with the Complaint. Settlement would lead to quicker resolution of the dispute than

7    a litigation. If the case settled, there would have been no need to incur the time and expense to

8    serve Worldwide in the United Kingdom with the Complaint.

9        18.    To this day, the parties continue to attempt to settle their differences.

10   Unfortunately, the parties have yet to find common ground.

11       I declare under penalty of perjury under the laws of the United States of America that

12   the foregoing is true and correct.


14   Executed at San Francisco, California, on January 22, 2008.



                        Daniel O'Donnell
17



{00900573.1}

                        -4-

# Exhibit A

InterSearch Corporate Services San Francisco and New York Offices - address, phone, an...    Page 1 of 2

# Inter)Search Corporate Services, Inc.

a Banks.com, Inc. Company

- Home
- Who We Are
- What We Do
- Careers
- Contact Us

Home > Contact Us



# Contact Us

## San Francisco Headquarters

222 Kearny Street, Suite 550
San Francisco, CA 94108 (map)

tel: 415.962.9795
fax: 415.869.9954

info: info@intersearch.com
training: training@intersearch.com

## New York Office

14 Wall Street, 20th Floor
New York, NY 10005 (map)

tel: 646.290.8389

Home | Site Map | Contact Us

EXHIBIT A
PAGE 5

Copyright © 2002-2007 InterSearch Corporate Services, Inc. — All Rights Reserved

EXHIBIT $A$
PAGE $6$

Exhibit B

## REISS, EISENPRESS & EISENBERG

ATTORNEYS AT LAW

425 MADISON AVENUE

NEW YORK, NEW YORK 10017-1110

TELEPHONE (212) 753-2424

FAX (212) 753-3829

mail@reisseisen.com

HOWARD R. REISS

SHERRI L. EISENPRESS

LLOYD M. EISENBERG

———

RUYA CARTON

MATTHEW SHEPPE
(of counsel)

AUDREY E. WEINBERGER
(not yet admitted)

LONG ISLAND OFFICE:
2631 MERRICK ROAD
SUITE 401
BELLMORE, NY 11710
(516) 221-3700

March 30, 2005

**BY OVERNIGHT DELIVERY**

Mr. Dan O'Donnell
President and Chief Executive Officer
Intersearch Group
250 Montgomery Street
Suite 1200
San Francisco, CA  94104

re:  **Trademark Infringement**

Dear Mr. O'Donnell:

This firm represents Conex Incorporated ("Conex"), an organization of executive search and human resource consulting firms and the owner of the "INTERSEARCH" trademark (Registration No. 2,346,993).  Your firm's ongoing use of the INTERSEARCH mark has caused and continues to cause Conex significant damage.

As you are aware, my client has attempted to resolve the matter of Intersearch Group's infringement of Conex's mark without resort to legal action, apparently to no avail.

Accordingly, I write to formally notify you that unless a satisfactory resolution of this matter is reached by April 6, 2005, Conex will be left no alternative other than the commencement of litigation for trademark infringement and the assertion of claims for damages, costs and attorneys fees.

EXHIBIT _B_

PAGE _7_

I look forward to your prompt response.

Very truly yours,

Sherri L. Eisenpress

cc: Mr. Fred Siegel

SLE/aj

- 2 -

Exhibit C

# AGREEMENT

THIS TRADEMARK SETTLEMENT AGREEMENT ("Agreement") is by and between Conex Incorporated Corp., ("Conex"), a New York corporation with its principal place of business at 950 Third Avenue, New York, NY 10022, and InterSearch Group, Inc., ("InterSearch Group"), a Florida corporation with its principal place of business at 250 Montgomery Street, Suite 1200, San Francisco, CA 94104 (referred to collectively as the "**Parties**" and individually as a "**Party**").

WHEREAS, Conex is the sole owner of all rights, title and interest in and to the trademark INTERSEARCH, United States Trademark Registration No. 2531787 for goods and services in International Class 35 identified as "on-line executive search and human resources consultation services featuring information regarding salary, posting of resumes, searches for candidates, global matching of candidates and employers," United States Registration No. 2346993 for goods and services in International Class 35 identified as "personnel placement and recruitment," and United States Registration No. 1125849 for goods and services in International Class 35 identified as "employee information services, specifically evaluation of qualifications, skills, interests of prospective job applicants, matching same with listings of job opportunities provided by employers, and providing biographical data of likely candidates to employers" (collectively "Marks");

WHEREAS, InterSearch Group has adopted INTERSEARCH as a mark in connection with, among other things, employment consulting services;

WHEREAS, a dispute has arisen involving the use by InterSearch Group of INTERSEARCH; and

WHEREAS, the parties hereto, without admitting or conceding any fault or liability, desire to reach a full and final compromise and settlement of any and all disputes or claims existing or that might exist between Conex, on the one hand, and

EXHIBIT C
PAGE 9

InterSearch Group, on the other hand, pertaining to the use of INTERSEARCH by InterSearch Group;

Now, THEREFORE, for and in consideration of the promises set forth herein, the parties hereto agree as follows:

### AGREEMENT

1.    InterSearch Group shall pay to Conex the sum of fifty-thousand United States dollars ($50,000.00) within 3 business days after this Agreement has been executed by both Parties and the original thereof has been delivered to Conex's counsel, Morrison & Foerster LLP, to the attention of Rebekah Kaufman, Esq.

2.    Conex shall execute the assignment in the form attached hereto as Exhibit A within 10 business days after receipt of all payments due hereunder.

3.    Conex, and its representatives, assigns, and subsidiary and affiliate corporations, and their past and present officers, directors, shareholders, agents, employees, attorneys, successors and assigns do hereby completely release and forever discharge InterSearch Group, and its representatives, assigns, and subsidiary and affiliate corporations, and their past and present officers, directors, shareholders, agents, employees, attorneys, successors and assigns from any and all claims, causes of action, rights, demands, liabilities, and suits of any kind whatsoever, known or unknown, fixed or contingent, which Conex had, now has, or which may accrue in the future, based upon any act, omission, occurrence or event occurring prior to the date hereof, arising out of or in any way related to the Marks.

InterSearch Group, and its representatives, assigns, and subsidiary and affiliate corporations, and their past and present officers, directors, shareholders, agents, employees, attorneys, successors and assigns do hereby completely release and forever discharge Conex, its representatives, assigns, and subsidiary and affiliate corporations, and their past and present officers, directors, shareholders, agents, employees, attorneys,

EXHIBIT   C
PAGE   10

successors and assigns from any and all claims, causes of action, rights, demands, liabilities, and suits of any kind whatsoever, known or unknown, fixed or contingent, which InterSearch Group had, now has, or which may accrue in the future, based upon any act, omission, occurrence or event occurring prior to the date hereof, arising out of or in any way related to the Marks.

4.     Each party acknowledges having been informed by an attorney of the provisions of Section 1542 of the Civil Code of the State of California, and hereby expressly waives and relinquishes all rights and benefits which he or she has or may have under that Section, which reads:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

5.     Nothing in this Agreement will be construed so as to impair any legal or equitable right of any party hereto to enforce any of the terms of the Agreement by any means, including without limitation an action for damages or a suit to obtain specific performance of any or all of the terms of this Agreement. In the event of such an action, reasonable attorneys' fees and expert witness fees and expenses are recoverable by the prevailing party in addition to any other relief to which such party may be entitled.

6.     This Agreement, with the attached assignment, constitutes the entire agreement between the parties, superseding any and all previous oral or written representations, communications, understandings or agreements. Any amendment to this Agreement must be in a writing specifically referring to this Agreement, and signed by duly authorized representatives of the parties hereto.

7.     Each party shall bear its own attorneys' fees and costs incurred in or arising out of in any way related to the matters herein, including, but not limited to, the preparation and execution of this Agreement.

sf- 1982765                     3

EXHIBIT C
PAGE 11

8.    This Agreement shall inure to the benefit of the parties hereto, the successors and assignees of the marks mentioned in this Agreement, and each and all of their representatives, officers, directors, shareholders, partners, employees, agents, affiliates, and subsidiaries.

9.    Conex represents, warrants, and agrees that it has received prior independent legal advice from counsel of its choice with respect to the advisability of this settlement and this Agreement; and its corporate officers reviewing and executing the Agreement have been duly authorized and empowered to do so.

10.    InterSearch Group represents, warrants, and agrees that it has received prior independent legal advice from counsel of its choice with respect to the advisability of this settlement and this Agreement; and its corporate officers reviewing and executing the Agreement have been duly authorized and empowered to do so.

11.    The parties agree that this Agreement may be executed in counterparts.

12.    This Agreement is made under and shall be construed in accordance with the laws of the State of California, without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the laws of the State of California to the rights and duties of the Parties.

13.    The parties hereby warrant that each is fully entitled and duly authorized to complete its obligations hereunder.  The parties further warrant that there are not other persons or entities from whom (or from which) releases should be obtained in connection with the subject matter of this Agreement.  The parties agree that a breach of this representation and warranty would be deemed a material breach of the terms of this Agreement.

EXHIBIT C
PAGE 12

14.     In the event any one or more of the provisions of this Agreement shall for any reason be held to be invalid, illegal or unenforceable, then: (a) the illegal or unenforceable provision shall be replaced by a revised provision, which, being valid, comes closest to the intention of the parties underlying the invalid, illegal or unenforceable provision; and (b) the remainder of the Agreement will remain binding and in full force and effect.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed on the dates specified below.

CONEX INCORPORATED CORP.

Dated: August 23, 2005

Name: Fred Viegel
Title: President

INTERSEARCH GROUP, INC.

Dated: August 15, 2005

Name: DANIEL O'DONNELL
Title: CEO

sf- 1982765                           5

EXHIBIT ___
PAGE ___

## EXHIBIT A

## ASSIGNMENT

WHEREAS, Conex Incorporated Corp., a New York corporation, with offices at 950 Third Avenue, New York, NY 10022 ("ASSIGNOR") owns certain trademarks and/or service marks, and applications and/or registrations for such marks, as listed in Exhibit 1 attached hereto and incorporated herein by this reference ("MARKS"); and

WHEREAS, InterSearch Group, Inc., a Florida corporation, with offices at 250 Montgomery Street, San Francisco, CA 94104 ("ASSIGNEE"), desires to acquire all of the right, title and interest of ASSIGNOR in, to and under the MARKS, together with the goodwill of the business symbolized by the MARKS;

WHEREAS, ASSIGNOR and ASSIGNEE have entered into a certain Agreement dated August 23, 2005, among other things, assigning all right, title and interest in and to the MARKS and in and to the registrations and/or applications for same from ASSIGNOR to ASSIGNEE;

NOW, THEREFORE, in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration paid by ASSIGNEE to ASSIGNOR, the receipt and sufficiency of which hereby is acknowledged, ASSIGNOR does hereby sell, assign, transfer and convey unto ASSIGNEE its entire right, title and interest in and to the MARKS, and to the applications and/or registrations for the MARKS, together with the goodwill of the business symbolized by the MARKS and the portion of the business of the ASSIGNOR to which the MARKS pertain, including the right to sue and recover for any past infringement thereof.

IN WITNESS WHEREOF, ASSIGNOR has caused this Assignment to be duly executed by an authorized officer on this 23ᵈ day of August, 2005.

By: _Fred Nigel_

Name: _Fred Nigel_

Title: _President_

EXHIBIT C
PAGE 14

**EXHIBIT 1**

**MARKS**

| COUNTRY | MARK | REG. NO. |
|---------|------|----------|
| United States | INTERSEARCH | 2531787 |
| United States | INTERSEARCH | 2346993 |
| United States | INTERSEARCH | 1125849 |

EXHIBIT C
PAGE 15

# Exhibit D

DEC-21-2006 18:33 From:                                   To: 415 738 5382        P.2/6

12/20/2006 10:27 FAX 1 206 682 6031        SEED IP LAW GROUP PLLC                @002

Seed<sup>IP</sup>

December 19, 2006                                  Lorraine Linford
                                                   (206) 694-4826
                                                   LorraineL@SeedIP.com

<u>By Facsimile 415.962.9702</u>
<u>Confirmation By US Mail</u>

Mr. Dan O'Donnell                                  <u>Without Prejudice</u>
President, Chairmen and CEO of InterSearch Group Inc.
222 Kearny Street, Suite 550
San Francisco, CA 94108

Re:    Trademark Misappropriation, Infringement and Unfair Competition
       Seed IP Reference: 480243.801

Dear Mr. O'Donnell:

We represent Intersearch Worldwide Limited (ISww) in trademark matters. Information regarding our client may be found at www.intersearch.org. As discussed in more detail on our client's website, the international partners and shareholders of ISww work on personnel recruitment and related services, in their respective countries. There is only one shareholder in each country, and each such shareholder is the exclusive licensee of our client's INTERSEARCH trademark in that country. Until August, 2005, Conex, Inc. was the U.S. licensee of our client

Fred Siegel, on behalf of Conex, executed an ISww Shareholders Agreement on May 23, 2003. A copy of relevant sections of that Shareholders Agreement, as well as the signature page containing Mr. Siegel's signature, are enclosed for your reference. Under the Shareholders Agreement, Conex acknowledged that the INTERSEARCH mark and logo were the property of ISww and were used only by permission by ISww. (Please see Section 4.1.) Furthermore, while Conex was required under the terms of the Agreement to take reasonable steps to protect the INTERSEARCH mark in the U.S. at its own expense, the Agreement makes it clear that such steps were taken for and on behalf of ISww. (Please see Section 4.2.) As noted in Section 7 of the Agreement, Conex acknowledged that "for the avoidance of doubt the intellectual property in the trading name, style, mark and logo "InterSearch" belongs to the company. The Members are duly authorized in accordance with this agreement to use the name, style, mark and logo for so long as they remain Members of the company. On termination of Membership, for whatever reason, the right to use the name, style, mark, logo and Internet domain name shall cease."

Although Conex registered the INTERSEARCH mark with the U.S. Patent and Trademark Office in its name, Conex subsequently agreed that the mark and registrations should be owned by ISww, and expressly acknowledged ISww's ownership of the mark by executing the Shareholders Agreement. As such, Conex was obligated to assign U.S. trademark registrations 2,531,787, 2,346,993, 1,125,849 to ISww. Furthermore, Conex's use of the INTERSEARCH mark and all rights associated therewith inured to our client's benefit, such that our client is the rightful owner of the common law rights developed by Conex's use of the mark on the relevant services.

It has recently come to our clients' attention that contrary to Conex's obligations under the Shareholders Agreement, it assigned our client's INTERSEARCH mark, and the three associated US trademark registrations, namely, registration numbers 2,531,787, 2,346,993,



EXHIBIT D
PAGE 16

DEC-21-2006 18:33 From:                              To: 415 738 5382        P.3/6

12/20/2006 10:27 FAX 1 206 682 6031        SEED IP LAW GROUP PLLC                    @003

Mr. Dan O'Donnell                                                        480243.801
December 19, 2006
Page 2

1,125,849, to InterSearch Group.  As a licensee only of the INTERSEARCH mark, Conex did
not have the right to assign the three US trademark registrations and the associated mark
and goodwill, to your company.

It appears from a review of your website located at www.InterSearch.com, that InterSearch
Group adopted the InterSearch name in November 2004, long after our client's licensee,
Conex, began using the INTERSEARCH mark on the personnel placement, recruitment and
other services identified in the three registrations misappropriated by Conex and assigned to
InterSearch Group.  Our client therefore has prior rights to the INTERSEARCH mark for such
services.

It has recently come to our client's attention that you are using the INTERSEARCH mark in
connection with services that are directly competitive with those of ISww.  Such use falsely
creates the impression that InterSearch Group is affiliated with our client, and is likely to
result in consumer confusion.  As such, your use of the INTERSEARCH mark in connection
with such services infringes our client's mark, in violation of state and federal trademark and
unfair competition laws.  If the infringement is willful, InterSearch Group may be liable for
increased damages and attorney's fees.  To the extent you were aware of Conex's
relationship with ISww, we also believe that your acquisition of the trademark registrations
from Conex may constitute an intentional interference with our client's contractual
relationship with Conex.

We therefore require, on behalf of our client, that InterSearch Group assign the three US
trademark registration numbers 2,531,787, 2,346,993, 1,125,849, to ISww; delete the
employment related services from its US Trademark Application Serial No. 76/658,774; and
agree to refrain from using or registering the mark in connection with such services.  As it
appears that InterSearch Group's primary business is concerned with internet search engine
services, customized internet searching for others, computer consultation in the field of
information technology, and related services, we believe that an amicable resolution of this
situation should be possible.  We therefore look forward to receiving a favorable response
within ten days of receipt of this letter.  If we are unable to reach an amicable resolution,
please note that our client will oppose your pending Application No. 76/658,774, and will be
forced to take further legal action to enforce its rights.

Very truly yours,

Seed IP Law Group PLLC

Lorraine Linford

Enclosures:
    Copy of relevant sections of the ISww Shareholders Agreement
    Signature page containing Mr. Fred Siegel's signature

879929_1.DOC

DEC-21-2006 18:33 From:                          To: 415 738 5382        P.4/6

12/20/2006 10:27 FAX 1 206 682 6031        SEED IP LAW GROUP PLLC                    ☑004

# SECTION 1
# INTERSEARCH (WORLDWIDE) LIMITED

# SHAREHOLDERS AGREEMENT
# (FIRST SCHEDULE)

EXHIBIT D
PAGE 18

**ASSOCIATION**

4.1     Each Member acknowledges that the name "InterSearch" and logo
        "InterSearch", or any other designation are the property of
        InterSearch, and may be used only by permission of InterSearch and
        as directed by the Board of Directors and the By-laws.

4.2     Each Member shall, at its own expense take all reasonable steps to
        protect the name "InterSearch" and the logo "InterSearch" in the
        territory in which the Member conducts its business, provided always
        that such steps are taken for and on behalf of InterSearch.

4.3     Any Shareholder seeking to open an office outside its existing
        InterSearch jurisdiction and wishing to use the InterSearch brand,
        should first gain authorisation from the Board who will act in the best
        interests of the whole membership when and if granting such a
        licence.

4.4     In the event that a Shareholder's business is acquired, merged, split
        between the existing owners, or is reconstructed in any way that may
        affect the working relationship between the Shareholder and the other
        InterSearch Shareholders, the Board may review the Shareholder's
        new corporate structure, terminate the existing agreement if it is not
        considered to be in the best interests of the other Shareholders and /
        or create a new agreement between another party or parties who
        appear to offer the greatest benefit to the other InterSearch
        Shareholders.  Such a change will require a 75% majority vote from
        the Shareholders.

4.5     Any merger or creation by one InterSearch Shareholder of an office in
        another jurisdiction where there is no other InterSearch presence shall

5

DEC-21-2006 18:34 From:                                To: 415 738 5382        P.6/6

12/20/2006 10:28 FAX 1 206 682 6031        SEED IP LAW GROUP PLLC                  ☒006

**INTELLECTUAL PROPERTY**

7        For the avoidance of doubt the intellectual property in the trading
         name, style, mark and logo "InterSearch" belongs to the company.
         The Members are duly authorised in accordance with this agreement
         to use the name style, mark and logo for so long as they remain
         Members of the company.  On termination of Membership for
         whatever reason, the right to use the name, style, mark, logo and
         Internet domain name shall cease.


**INTERSEARCH IS NOT A RECRUITMENT CONSULTANCY**

8.1      InterSearch does not provide professional services of any kind and
         shall not be an organization engaged in the practice of personnel
         recruitment, selection or consulting or any other professional services
         to the public, the Shareholder firms, or any other party. Each Member
         is responsible for the professional work, duties, responsibilities and
         liabilities arising from any contract, referral, or other assignment
         performed or undertaken by it or its associates.

8.2      Each Member hereby indemnifies and agrees to hold InterSearch
         harmless from any cost, fee, loss, expense, damages, or other
         negative consequence which, in the reasonable opinion of the Board
         of Directors arises either directly or indirectly as a result of that
         Member's actions or inactions.

12

EXHIBIT D
PAGE 20

**CERTIFICATE OF SERVICE**

I certify that on January 22, 2008, I electronically filed the document described as **DECLARATION OF DANIEL O'DONNELL IN SUPPORT OF DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** with the Clerk of the Court using the ECF system which will send notification of such filing to the parties. I further certify that I have mailed a true copy of the above document via U.S. Mail to the non-ECF participants addressed as follows:

Robert C. Faber
Ostrolenk Faber Gerb & Soffen LLP
1180 Avenue of the Americas
New York, NY 10036

Angela M. Martucci
Ostrolenk Faber Gerb & Soffen, LLP
1180 Avenue of the Americas
New York, NY 10036

Peter Sloane
Ostrolenk Faber Gerb & Soffen LLP
1180 Avenue of the Americas
New York, NY 10036

/s/ _____
Susan Lovelace

CHRISTIE, PARKER & HALE, LLP