**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

INTERSEARCH WORLDWIDE, LTD., a United Kingdom Corp.,

    Plaintiff,

v.

INTERSEARCH GROUP, INC., a Florida Corp.,

    Defendant.

No. C 07-4634 SBA

**ORDER**

[Docket No. 5]

## INTRODUCTION

Before the Court is defendant Intersearch Group, Inc.'s Motion to Dismiss (the "Motion") [Docket No. 5]. Defendant Intersearch Group, Inc. ("defendant") requests this Court to dismiss plaintiff Intersearch Worldwide, Ltd. ("plaintiff") under the first-to-file doctrine, on the grounds defendant filed an action similar to this one, against plaintiff, in the Southern District of New York, before plaintiff filed this one. The Court finds this matter appropriate for resolution without a hearing, under Fed. R. Civ. P. 78(b). For the reasons discussed below, the Court GRANTS the Motion, and dismisses plaintiff's complaint [Docket No. 1] without prejudice.

## BACKGROUND

**I.     The Parties and Related Entities**

    **A.     Plaintiff, Intersearch Worldwide, Ltd.**

Plaintiff is a United Kingdom-based corporation, Docket No. 35, Ex. "1" ¶ 2 ("S.D. N.Y. Compl."), and a global organization of executive search and human resource consultancy firms. Opp'n at 5:9-10. As such, plaintiff's "international partners and shareholders ... work on personnel recruitment and related services, in their respective countries. There is only one shareholder in each country, and each such shareholder is the exclusive licensee of [plaintiff's] INTERSEARCH trademark in that country." Docket No. 35, Ex. "2," Ex. "M," para. 1 (Letter from pl.'s counsel to def.'s counsel of 12/19/2006 ("Linford Letter")). Plaintiff licenses the use of its INTERSEARCH

1  mark under a Shareholders Agreement (the "Shareholder's Agreement"), which is governed by
2  United Kingdom law and requires all disputes arising under it be heard in the United Kingdom.
3  Opp'n at 5:10-12, 15-17; Linford Letter at 1, para. 2.

4      Plaintiff provides links to its shareholders through a web site at www.intersearch.org. Sloane
5  Decl. ¶ 11. Defendant alleges plaintiff has not performed any services in the field of employment
6  under the mark INTERSEARCH in the United States. Mot. at 3:25-27. And, plaintiff alleges it has
7  never had a place of business, employees, phone numbers, bank accounts, or other property in New
8  York. Docket No. 35, Ex. "3" ¶¶ 2-6 (Decl. of Heinz-Dieter Hestermann in Supp. of Mot. ("Hest.
9  Decl.")).

10     **B.**     **Defendant, Intersearch Group, Inc.[1]**

11     Defendant is a publicly traded, San Francisco-based Florida corporation, with a second office
12 in New York City. Docket No. 7 ¶¶ 3, 8 (Decl. of Gary W. Bogatay, Jr.); S.D. N.Y. Compl. ¶ 1;
13 Docket No. 39 ¶¶ 4-5 (Decl. of Daniel O'Donnell in Supp. of Reply ("O'Donnell Decl.")). In 2006,
14 defendant's revenues exceeded $25 million. Docket No. 6 ¶ 8 (Decl. of Peter S. Sloane ("Sloane
15 Decl.")). Defendant provides Internet search services through a combination of traffic aggregation
16 and proprietary web sites. *Id.* ¶ 3. These services include paid searches and direct-navigation,
17 driving traffic to advertisers and providing users with quick access to pertinent products and
18 services. *Id.* Defendant also maintains a web site, www.intersearch.com, where it promotes and
19 advertises its search services. *Id.* ¶ 4.

20     In addition, through its InterSearch Corporate Services division, defendant also provides
21 professional and technical consulting to large corporations, predominantly in the financial services
22 sector. *Id.* ¶ 5. Among other things, defendant provides rigorous employment screening searches
23 for its clients. *Id.* Defendant actively promotes its employment-related services through its web
24 site. *Id.* ¶ 6. Because of its service to the financial sector, New York is a critical market for
25 defendant,

---

[1] On November 27, 2007, defendant changed its name to Banks.com, but it continues to operate its Corporate Services division as Intersearch. Docket No. 39 ¶ 3 (Decl. of Daniel O'Donnell in Supp. of Reply).

1  ///

2  where it services numerous prestigious clients, including ADP, HSBC, Merrill Lynch, and Nomura

3  Securities.  O'Donnell Decl. ¶¶ 6-7.

**C.  Conex, Inc.**

Conex, Inc. ("Conex"), located in New York City, O'Donnell Decl. ¶ 8, Ex. "C" at 1, is not a party to this action or the one in the Southern District of New York, discussed *infra*, in part II.D. *See* S.D. N.Y. Compl., ¶¶ 1-2; Docket 35, Ex. "2" ¶¶ 1-3 (S.D. N.Y. 1st Am. Compl. ("FAC")). Conex, until terminated, was once plaintiff's licensee and had signed the Shareholder's Agreement. Opp'n at 6:5-6.  As discussed *infra*, in part II.B., in 2005, Conex may have misled defendant into believing it possessed the exclusive United States rights to the mark INTERSEARCH, for use in executive search and human resource services.

**D.  Cook Associates, Inc.**

Cook Associates, Inc. ("Cook") is not a party to this matter.  It is, however, a co-defendant in a suit by defendant against plaintiff, in the Southern District of New York, discussed *infra*, in part II.D.  In January 2008, plaintiff allegedly was in the process of formalizing a license agreement with Cook, Docket 35, Ex. "4" ¶ 2 (Decl. of John Kins in Supp. of Mot. ("Kins Decl.")), which negotiations did not occur in New York, Hest. Decl. ¶ 12.  A print-out allegedly from Cook's web site, dated January 22, 2008, apparently a the page titled "About Us," and sub-titled "Executive Search:  Global Operations[,]" states:

> As the exclusive United States representative of InterSearch, a worldwide executive search consortium, we offer global search capabilities through proven and trusted partners.  [¶]  InterSearch ranks as the 10th largest worldwide organization of executive search firm.  From Argentina to the United States, via Australia and the United Kingdom, in 45 countries, we are able to span the globe to find executive talent for our clients.  [¶]  For more information on InterSearch and to understand our process, please contact John Kins at 312.329.0900 or via e-mail at

///

///

3

1  ///
2  jkins@cookassociates.com; and visit the organization's website at
3  www.intersearch.org.
4  Docket No. 38 (Supp. Decl. of Peter S. Sloane in Supp. of Reply ("Supp. Sloane Decl.")), Ex. "D"
5  at 1.
6        Likewise, a print-out allegedly from plaintiff's web site, dated January 22, 2008, titled "The
7  Intersearch Network - your global/local partner for executive search" and sub-titled "Our
8  Locations[,]" has only one listing under the United States, which is for Cook. Supp. Sloane Decl.,
9  Ex. "C" at 12. The Cook entry lists seven offices in the following order: Chicago, New York,
10 Philadelphia, Boston, Washington, Boulder, and Ashland.[2] *Id.* The New York office is in
11 Manhattan. Sloane Decl. ¶ 14; Opp'n at 23-24. The print out only lists contact information for
12 Chicago, Supp. Sloane Decl., Ex. "C" at 13, however, because this is Cook's principal place of
13 business. Kins Decl.¶ 2.
14 **II.     Factual Developments**
15      **A.     Pre-Developments**
16       At a time unspecified in the pleadings, but apparently prior to March 2005, Conex became
17 plaintiff's exclusive United States shareholder. *See* Linford Letter at 1, para 2. Allegedly, under the
18 terms of the Agreement, Conex agreed the INTERSEARCH mark belonged to plaintiff, but that
19 Conex would have to take reasonable steps to protect it in the United States, at its own expense. *Id.*
20 Conex apparently then registered the INTERSEARCH mark with the United States Patent and
21 Trademark Office, in its own name, not plaintiff's. *Id.* at 1, para 3.
22      **B.     2005**
23       In March 2005, defendant received a cease and desist letter from Conex, alleging defendant
24 was infringing on Conex's trademark rights in three registrations of the mark INTERSEARCH for
25 executive search and human resource services. O'Donnell Decl. ¶ 8. In a June 25, 2005 letter,
26 Conex's counsel claimed Conex owned three federal registrations for the INTERSEARCH mark and
27
28   [2]    Ashland is in Virginia. Supp. Sloane Decl., Ex. "C" at 12.

4

1  ///

2  had been using it for executive recruitment in the United States and abroad for a number of years.

3  Docket No. 35, Ex. "2," Ex. "J" at 1, para 2.

4  After brief negotiations, defendant purchased the rights to the mark INTERSEARCH and

5  Conex' registrations. O'Donnell Decl. ¶¶ 9-10. In the settlement agreement, executed in August

6  2005, Conex warranted it was the sole owner of all right, title, and interest in the mark

7  INTERSEARCH and the registrations. *Id.* ¶ 11. By this agreement, defendant released Conex and

8  its affiliates from liability based on any prior acts related to the INTERSEARCH mark. Opp'n at

9  6:10-11; S.D. N.Y. FAC ¶ 39, Ex. "K" § 3. The agreement states it is governed by California law.

10 S.D. N.Y. FAC ¶ 39, Ex. "K" § 12. Plaintiff claims it was not a party to this agreement, nor did it

11 authorize it. Hest. Decl. ¶ 10. Plaintiff also claims it terminated Conex's license before the end of

12 August 2005. *Id.* ¶¶ 7-9.

13 At a time not indicated the pleadings, defendant filed with the United States Patent and

14 Trademark Office ("PTO"), application number 76/658,774 for the mark INTERSEARCH. *See*

15 Sloane Decl. ¶ 5.

16     **C.    2006**

17 On December 19, 2006, plaintiff's attorneys sent a cease and desist letter to defendant,

18 advising Conex did not have the authority to sell the INTERSEARCH registrations. Linford Letter,

19 paras. 3-4. The letter also claimed plaintiff had prior rights to the mark because Conex had used it

20 before defendant did. *Id.* at 2, para. 1. The letter demanded, *inter alia*, defendant cease using the

21 mark for employment related services, and transfer the registrations to plaintiff. *Id.* at 2, paras. 2-3.

22 It also demanded defendant delete the employment related services from its trademark application.

23 *Id.* at 2, para. 3. It noted, in closing, that defendant's primary services were in another field and

24 indicated "an amicable resolution ... should be possible." *Id.* It requested a favorable response

25 within ten days, and said if one were not received, its client would oppose defendant's trademark

26 application and "will be forced to take further legal action to enforce its rights." *Id.*

27 On December 22, 2006, defendant replied it was the true owner of the mark

28 INTERSEARCH. Supp. Sloane Decl. ¶ 5.

1  ///

2  **D.    2007**

3  On January 23, 2007, plaintiff filed a First Request for an Extension of Time to File a Notice
4  of Opposition against defendant's trademark application. Sloane Decl. ¶ 5.

5  On March 15, 2007, defendant received a letter reiterating plaintiff's position, stating it
6  might still be willing to discuss an amicable resolution if defendant cooperated fully and timely, but
7  would take "whatever steps are necessary" to secure the INTERSEARCH mark in the United States.
8  Supp. Sloane Decl. ¶ 6, Ex. "B" at 2, para 4 (Letter from pl.'s counsel to def.'s counsel of
9  3/15/2007).

10  In April 2007, the parties discussed settlement options by telephone. Opp'n at 6:13-14.

11  On May 3, 2007, defendant filed a complaint for a declaratory judgment of trademark
12  ownership and non-infringement in the Southern District of New York, in *Intersearch Group, Inc.*
13  *v. Intersearch Worldwide Ltd.*, case number 1:07-cv-3545 DAB (the "New York Action"). Sloane
14  Decl. ¶ 6. Defendant did not immediately serve plaintiff. *Id.* ¶ 7. The next day, defendant's counsel
15  e-mailed plaintiff's counsel about the status of settlement, but did not mention the suit, and "instead
16  continued to engage in settlement discussions." Opp'n at 7:16-18. The parties' counsels conferred
17  by telephone on May 7 and 31, and plaintiff made a settlement offer. *Id.* at 7:18-19. In these calls,
18  defendant's counsel did not mention the suit, but said he would speak with his client regarding the
19  offer. Docket No. 35, Ex. "5" ¶¶ 3-5 (Decl. of Lorraine Linford ("Linford Decl.")).

20  On June 26, 2007, plaintiff's attorneys sent a letter to defendant's attorneys stating it knew
21  about the New York Action, "but understood the parties were trying to resolve the matter without
22  litigation." Sloane Decl. ¶ 8; Opp'n at 7:22-23. Plaintiff's attorneys also advised they had filed a
23  Notice of Opposition to defendant's trademark application. Sloane Decl. ¶ 8. Three days later, on
24  June 29, 2007, defendant's attorneys asked plaintiff's attorneys if they would accept service, and
25  requested a new settlement proposal. *Id.* ¶ 9; Opp'n at 7:23-25.

26  On July 10, 2007, plaintiff's attorneys advised they had no authority to accept service, but
27  suggested an in-person settlement conference. Sloane Decl. ¶ 9; Opp'n at 7:25-27. On July 18,
28  defendant's counsel suggested a telephone call instead. Opp'n at 7:27-28. The parties' counsels

1  agreed to do this, but had to postpone due to scheduling conflicts. Linford Decl. ¶¶ 6-9.

2  ///

3        Defendant then served plaintiff under the Hague Convention, by FedEx, with delivery

4  effected on August 28, 2007. Sloane Decl. ¶ 10; Opp'n at 8:3-4. The next day, defendant's counsel

5  sent an email indicating he had a "time sensitive offer to convey[,]" but did not mention the suit.

6  Opp'n at 8:4-5, 6-7. Later that day, the parties' counsels spoke by telephone. *Id.* at 8:5-6.

7  Defendant's counsel conveyed a settlement offer, but did not mention the suit. *Id.* at 8:6-7.

8  Defendant's counsel requested a response to their proposal within two weeks, but indicated he knew

9  plaintiff would likely be unable to respond until after Labor Day. Linford Decl. ¶¶ 10-11.

10  Plaintiff's counsels claim defendant's offer was neither reasonable nor consistent with prior

11  discussions. Opp'n at 8:11-12.

12        On September 6, 2007, without prior notice to defendant, plaintiff filed suit in this matter, in

13  the Northern District of California. Sloan Decl. ¶ 11. Plaintiff alleged federal unfair competition,

14  common law unfair competition, intentional interference with contract, intentional interference with

15  prospective economic advantage, unfair competition under California law, and requested a

16  declaratory judgment and cancellation. *Id.* Specifically, plaintiff alleged, *inter alia*, infringement by

17  defendant of plaintiff's INTERSEARCH marks under the Lanham Act and California law, and

18  requested a declaratory judgment regarding the ownership of the INTERSEARCH marks and

19  registrations, and asserted defendant intentionally interfered with plaintiff's United Kingdom

20  contracts and business expectations in violation of California law. Linford Decl. ¶ 13. Plaintiff

21  served defendant by hand, the next day. *Id.*

22        Plaintiff claims, when it sued, it did not know about the New York Action, as it did not

23  realize the significance of defendant's FedEx, containing the New York Action's pleadings, until

24  some unspecified time after September 7, 2007. Hest. Decl. ¶ 11.

25        On September 10, 2007, plaintiff's counsel asked defendant's counsel to dismiss, and agree

26  to be sued in San Francisco, where plaintiff's counsel believed there would be no personal

27  jurisdiction issues, but defendant declined. Linford Decl. ¶ 14.

28        On September 19, 2007, the parties stipulated to extend the time through September 24,

1  2007, for plaintiff to respond to defendant's New York Action complaint. Sloane Decl. ¶ 12; Opp'n
2  at 8:21-22.
3        At a time not specified in the pleadings, defendant learned Cook was plaintiff's putative
4  licensee and was claiming the right to use the mark INTERSEARCH in America. Sloane Decl. ¶ 14.
5  On September 21, 2007, plaintiff's counsel again asked defendant's counsel to dismiss, and agree to
6  be sued in San Francisco, but defendant declined. Linford Decl. ¶ 17. This same day, defendant
7  filed a First Amended Complaint ("FAC") in the New York Action adding Cook as a co-defendant.
8  Sloane Decl. ¶ 13. The FAC sought damages and injunctive relief preventing plaintiff and Cook
9  from using the mark INTERSEARCH in the United States. Reply at 4:19-20. Plaintiff alleges the
10 FAC makes no allegations regarding any acts by Cook in New York giving rise to defendant's
11 claims against Cook or plaintiff. Opp'n at 5:24-25. Plaintiff also claims the FAC was an attempt to
12 add a local co-defendant, in anticipation of a motion by defendant to dismiss for lack of personal
13 jurisdiction. Opp'n at 8:26-28.
14       On October 4, 2007, defendant filed its motion to dismiss under the first-to-file rule. Mot.
15 at 11. The next day, plaintiff and Cook filed a motion to dismiss the New York Action or transfer
16 any remaining claims to this district. Opp'n at 4:19-20. Defendant opposed, and the matter was
17 fully briefed as of November 1, 2007. *Id.* at 20-22.

## LEGAL STANDARD

19       There is a generally recognized doctrine of federal comity which permits a district court to
20 decline jurisdiction over an action when a complaint involving the same parties and issues has
21 already been filed in another district. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95
22 (9th Cir. 1982) (citing *Church of Scientology of Cal. v. U.S. Dept. of Army*, 611 F.2d 738, 749 (9th
23 Cir. 1979)); *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (citing *Church of
24 Scientology*, 611 F.2d at 749) ("[T]here is a strong presumption across the federal circuits that favors
25 the forum of the first-filed suit under the first-filed rule." ).
26       Normally sound judicial administration would indicate that when two identical
27       actions are filed in courts of concurrent jurisdiction, the court which first acquired
28       jurisdiction should try the lawsuit and no purpose would be served by proceeding

1  with a second action.  However, this "first to file" rule is not a rigid or inflexible rule
2  to be mechanically applied, but rather is to be applied with a view to the dictates of
3  sound judicial administration.  As we stated in *Church of Scientology*, "(T)he 'first to
4  file' rule normally serves the purpose of promoting efficiency well and should not be
5  disregarded lightly.  Circumstances and modern judicial reality, however, may
6  demand that we follow a different approach from time to time ...."

*Pacesetter*, 678 F.2d at 95 (quoting *Church of Scientology*, 611 F.2d at 750 (citation omitted)).

"The purpose of the comity principle is of paramount importance.  The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." *Church of Scientology*, 611 F.2d at 750.  Thus, it "works most efficiently where previously-filed litigation is brought promptly to the attention of the district court, and the court defers." *Id.*  In such a case, a court may stay, transfer, or dismiss an action. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622 (9th Cir. 1991).  Alternatively, if a court retains an action, it may enjoin the parties from prosecuting the other action. *E.E.O.C. v. Univ. of Penn.*, 850 F.2d 969, 972 (3d Cir. 1988).

> The Supreme Court has emphasized that the solution of these problems involves determinations concerning "(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," and that "an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts."

*Pacesetter*, 678 F.2d at 95 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952)).

**ANALYSIS**

Absent an exception to the first-to-file rule, a court of second-filing will defer to a court of first-filing, if the two matters before them exhibit chronology, identity of parties, and similarity of issues. *See Alltrade*, 946 F.2d at 625-27.  For the reasons discussed below, the Court finds this matter and the New York Action exhibit chronology, identity of parties, and similarity of issues, and no exceptions bar the application of the first-to-file rule or counsel against dismissing this matter.

9

1   ///

2   ///

3   **I.     Chronology**

4   Defendant correctly argues the New York Action was the filed before this matter. Mot.
5   at 7:2-7. Defendant filed the New York Action on May 3, 2007. Plaintiff filed this matter on
6   September 6, 2007, over four months later. The two matters exhibit chronology. Plaintiff argues as
7   the Southern District of New York allegedly has no personal jurisdiction over it, the proper date for
8   considering whether the two matters exhibit chronology is when defendant filed its First Amended
9   Complaint, bringing in Cook, which allegedly provided the New York Action with some basis for
10  personal jurisdiction. Opp'n at 10-15.

11  First, the Court notes plaintiff cites a great deal of case law regarding the jurisdictional issue,
12  but cites none justifying this Court looking at the date on which defendant filed its amended
13  pleading. Second, with regards to the jurisdictional issue, the Court deals with it in part IV.C, *infra*.
14  For now, the Court simply notes raising this issue does not bar application of the first-to-file
15  doctrine.

16  Third, defendant correctly argues the Court should look to when the Southern District of
17  New York acquired jurisdiction over the *New York Action*, not the *parties*. Reply at 9:20-10:3. As
18  the Ninth Circuit has held, "[a] federal action is commenced by the filing of the complaint, not by
19  service of process. Fed.R.Civ.P. 3. It is thus the filing of actions in coordinate jurisdictions that
20  invokes considerations of comity." *Pacesetter*, 678 F.2d at 96 n.3, *see Time Warner Cable, Inc. v.*
21  *USA Video Tech. Corp.*, 520 F.Supp.2d 579, 585 n.48 (D. Del. 2007) ("when investigating a
22  first-filed issue, relation back analysis is unnecessary, because" the focus is on the original
23  complaint, not any amended complaints); *Schering Corp. v. Amgen Inc.*, 969 F.Supp. 258, 265-68
24  (D. Del. 1997) (in a first-to-file analysis, the focus is on the subject-matter jurisdiction, not the
25  parties' status or presence). Thus, for purposes of analyzing chronology, it is irrelevant when or
26  how defendant added parties to the New York Action.[3] All this Court is concerned with is whether

27  ---

28  [3] If this were not the case, then the parties for the purposes of the identity analysis would have to be exactly the same, which they need not. *See infra* part II and note 6.

10

1  the Southern District had the matter before it first, which in this case, it did.
2  ///
3  **II.   Identity of Parties**
4      Defendant correctly argues the parties are sufficiently identical between the New York
5  Action and this matter. Mot. at 9-14. Plaintiff's only opposition is apparently that by adding Cook,
6  defendant's New York Action constitutes a "disfavored customer-type claim." Opp'n at 2 ¶ 12,
7  9:3-10:3.[4] Defendant, however, correctly notes the New York Action does not constitute a
8  customer-type claim, for three reasons. Reply at 8:6-9:19. First, defendant points out Cook is a
9  licensee, not a customer.[5] *Id.* at 8:14-22.
10     Second, defendant properly points out plaintiff has misstated how a customer-claim works.
11 Id. at 8:23-9:5. As the Ninth Circuit has held, these are "cases in which the patentee has been
12 enjoined from proceeding with a first-filed action against a customer for infringement when a second
13 action has been filed by the manufacturer against the patentee contesting the validity of the patent."
14 *Pacesetter*, 678 F.2d at 96. Here, as defendant notes, even assuming Cook were plaintiff's
15 "customer," defendant first sued plaintiff, not Cook. Thus, the customer-type claim is not at issue
16 here.
17     Third, defendant notes even if Cook were somehow plaintiff's "customer," plaintiff is using
18 the INTERSEARCH mark, in the United States, exclusively through Cook, who replaced Conex as
19 plaintiff's exclusive shareholder in this country. *See* Reply at 9:6-16. Thus, no matter where
20 plaintiff and defendant resolve their trademark dispute, Cook is a very real party to that dispute. *See*
21 *id.* Thus, the New York Action and this one exhibit identity of the parties.[6]

---

[4] The Court notes although plaintiff alleges this, it never actually argues the point.

[5] Actually, Cook is plaintiff's exclusive United States shareholder, part of a global organization of 45 shareholders, who together provide executive search services to the organization's "customers." Cook is not plaintiff's "customer."

[6] The Court also notes exact identity is not required to satisfy the first-to-file rule. The rule is satisfied if some the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters. *See Kerotest Mfg. v. C-O-Two Fire Equip. Co.*, 189 F.2d 31 (3d Cir.1951); *Inherent.com v. Martindale-Hubbell*, 420 F.Supp.2d 1093, 1097 (N.D. Cal. 2006); *Dumas v. Major League Baseball Props., Inc.*, 52 F.Supp.2d 1183, 1189 (S.D. Cal. 1999), *vacated on other grounds by*, 104 F.Supp.2d 1224 (S.D. Cal. 2000), *aff'd*, 300 F.3d 1083 (9th

///

## III.     Similarity of Issues

Defendant correctly notes the New York Action and this matter are similar. Mot. at 7:16-8:9. Plaintiff does not oppose this assertion, nor could it. In its First Amended Complaint[7] in the New York Action, defendant requested a declaratory judgment that it holds the INTERSEARCH mark and the registrations at issue. It also requested a declaratory judgment that it had not infringed on this mark, but that plaintiff had. Defendant also pled unfair competition under the Lanham Act, 15 U.S.C. §1125(a), and common law unfair competition. Likewise, in its complaint in this matter, plaintiff has plead a Lanham violation, common law unfair competition, requested a declaration it owns the mark, and requested the cancellation of defendant's registrations. These claims arising from the dispute over the mark are similar.

In addition, plaintiff claims intentional interference with contract, and intentional interference with prospective economic advantage, in this matter, arising from defendant's dealings with Conex in obtaining the mark and registrations. Defendant, however, will likely argue in the New York Action that it owns the mark and registrations, because its dealings with Conex were lawful. *See* Reply at 12:2-5 (Conex is a witness for both partes.) While it is possible for the Southern District to find Conex did not have the authority to transfer the mark or registrations, without finding defendant engaged in any intentional torts against plaintiff, the underlying facts of defendant's and Conex's conduct will be front and center in the New York Action.

Further, as defendant correctly notes, the "first-to-file" rule is satisfied by a *sufficient* similarity of issues. Mot. at 8:4-7. *Dumas v. Major League Baseball Props., Inc.*, 52 F.Supp.2d 1183, 1193 (S.D. Cal. 1999), *vacated on other grounds by*, 104 F.Supp.2d 1224 (S.D. Cal. 2000), *aff'd*, 300 F.3d 1083 (9th Cir.2002); *Ward v. Follett Corp.*, 158 F.R.D. 645, 649 (N.D. Cal. 1994).

---

Cir. 2002).

[7]    The Court need not examine defendant's initial complaint. *Ward v. Follett Corp.*, 158 F.R.D. 645, 648-49 (N.D. Cal. 1994). Although the critical focus in a first-to-file analysis is on when a court first acquired jurisdiction, for determining similarity, a court should examine the most recent complaint, as long as any amendments could have been included in an initial complaint. Here, defendant added unfair competition claims to its complaint, which it could have brought in its initial complaint.

12

1  The test is whether:

2  ///

3      (1) are the two pending actions so duplicative or involve substantially similar issues
4      that one court should decide the issues; and (2) which of the two courts should
5      resolve the case? The issues need not be identical to allow one court to decide the
6      action, but there must be 'substantial overlap between the two suits.'

7  *Dumas*, 52 F.Supp.2d at 1193 (quoting *Excel Music, Inc. v. Simone*, 1996 WL 5708, *5, 1996 U.S.
8  Dist. LEXIS 242, *16 (E.D. La., Jan. 5, 1996) (unreported)).

9  Here, rather clearly the answer to the first question is an unequivocal "yes." Otherwise, there very
10 well would be a risk of absurdly conflicting determinations, between the two actions.

11     Lastly, plaintiff also pleads, in this matter, unfair competition under section 17200 *et seq*. of
12 the California Business and Professions Code. This is a derivative claim, in that it provides
13 restitution or other equitable remedies, but only if defendant violated some *other* law. *See* Cal. Bus.
14 & Prof. Code § 17203. Although it is unclear what restitution plaintiff could seek here, this claim
15 adds little to nothing to its pleadings, and thus, whether or not defendant can plead this in the New
16 York Action, or desires to, is of no import. *Dumas*, 52 F.Supp.2d at 1193 (first-to-file rule was not
17 barred just because both suits had RICO claims, but only one had a section 17200 claim). Thus, the
18 New York Action and this matter are similar.

19 **IV.**     **No exceptions apply here to remove this matter from the first-to-file rule.**

20     **A.**     **Defendant did not act in bad faith nor file an anticipatory suit.**

21     Plaintiff argues defendant's filing for a declaratory judgment in the New York Action was an
22 anticipatory suit, Opp'n at 7:5-8:28, 15:20-16:9, but the law in this area does not support its
23 assertion. "Anticipatory suits are disfavored because they are an aspect of forum-shopping. As was
24 stated in *American Automobile Ins. Co. v. Freundt*, 103 F.2d 613, 617 (7th Cir.1939): 'The
25 wholesome purposes of declaratory acts would be aborted by its use as an instrument of procedural
26 fencing either to secure delay or to choose a forum.' " *Mission Ins. Co. v. Puritan Fashions Corp.*,
27 706 F.2d 599, 602 n.3 (5th Cir.1983), quoted in part, in *Alltrade*, 946 F.2d at 628.

28     "A suit is 'anticipatory' for the purposes of being an exception to the first-to-file rule if the

plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 271 (C.D. Cal. 1998); *see Manuel*, 430 F.3d at 1136-37; *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 972-74 (3rd Cir. 1988) (subpoena issued from one district, and issuer agree to wait 30 days to enforce it, during which, served party challenged it in another district), *aff'd on other grounds*, 493 U.S. 182 (1990); *Mission Ins. Co.*, 706 F.2d 599, 600, 602-03 (carrier told insured, facing policy deadline for suit, to hold suit until carrier provide written opinion regarding dispute, but instead ran to court and sued insured); *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 662-64 (5th Cir. 1967) (on receipt of letter indicating plaintiff would sue in one district, unless recipient waived personal jurisdiction in another, recipient immediately sued sender).

But, "a letter which suggests the possibility of legal action, however, in order to encourage or further a dialogue, is not a specific, imminent threat of legal action." *Guthy-Renker Fitness, L.L.C.*, 179 F.R.D. at 271; *Ward*, 158 F.R.D. at 648. Likewise, "a reasonable apprehension that a controversy exist[s] sufficient to satisfy the constitutional requirements for a declaratory judgment action ... is not equivalent to an imminent threat of litigation." *Manuel*, 430 F.3d at 1137. Because "a declaratory action is an appropriate vehicle to 'alleviate the necessity of waiting indefinitely for a [trademark] owner to file an infringement action.' " *Guthy-Renker Fitness, L.L.C.*, 179 F.R.D. at 272.

In this case, as defendant notes, plaintiff's counsels' December 2006 letter said if plaintiff did not receive a favorable response, it would opposed defendant's trademark application and would be forced to take further legal action, but indicated an amicable resolution should be possible. Reply at 5:8-11, 6:6-7. Defendant replied within ten days, but not favorably. Plaintiff opposed defendant's trademark application, but took no other action, until three months later. As defendant notes, plaintiff's counsels sent a March 2007 letter stating an amicable resolution was still possible, and backed away from its earlier allusion to "legal action," instead vaguely noting it would take "whatever steps are necessary" to secure the mark. *Id.* at 5:14-18, 6:6-11.

Defendant correctly argues plaintiff failed to alert defendant with "specific, concrete indications that a suit by [plaintiff] was imminent." *Id.* at 5:19-6:15. Defendant also correctly notes

while the parties reasonably apprehended a controversy existed, until plaintiff found out about defendant's suit, there was no imminent threat of any legal action by any party. *Id.* As defendant notes, "there is no requirement that a business threatened with the *possibility* of an infringement lawsuit wait to be served," Reply at 5:19-23, which is why it filed for a declaratory judgment. Otherwise, plaintiff could have held defendant in limbo indefinitely, on such a mere possibility.

Plaintiff alleges it was bad faith for defendant to file for a declaratory judgment in the midst of settlement talks, then withhold service, then serve process, but make a settlement offer rather than notify plaintiff about the service. Opp'n at 15:20-16:9. For support, plaintiff cites to *NSI Corp. v. Showco, Inc.*, 843 F.Supp. 642, 644 (D. Or. 1994).

Defendant, however, correctly notes the president of NSI admitted his company filed first to avoid an inconvenient forum, Reply at 6:21-24.[8] In contrast, defendant correctly claims it was not forum shopping, which topic is addressed *infra* in part IV.B. Defendant also asserts the settlement negotiations were not proceeding well, making it "increasingly apprehensive about its business plans under the mark in question." Reply at 6:19-20. This does not show bad faith.

As to plaintiff's issues regarding service, a party is only required to serve process under Federal Rule of Civil Procedure 4, and no more. *Ward*, 158 F.R.D. at 649 (party sued but *withheld service during settlement negotiations*, but then timely served under Rule 4) (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988)). Further, once a party serves they are not required to provide any additional notice. *Id.* And, when defendant served plaintiff, and reasonably assumed plaintiff thus knew it had been served,[9] it told plaintiff it had a "time sensitive" settlement offer. As a result, it does not appear defendant raced to the courthouse, or engaged in deceptive

---

[8] The Court also notes the same day NSI filed, it sent a letter to Showco stating, "NSI sincerely desires to resolve this matter amicably and forego the expense and disruption of litigation." *NSI Corp.*, 843 F.Supp. at 644. In contrast, once plaintiff knew about defendant's suit, defendant was open about its intentions. Further, defendant never represented it would not sue, or was not suing.

[9] In contrast, plaintiff's conduct in filing this matter is quite confusing. It knew defendant was about to serve it, and defendant did serve it, but plaintiff claims it failed to open or otherwise evaluate an overseas FedEx delivery, received around the time it would have been looking for process from defendant, for more than *ten* days. This seems unusual for the keystone entity of the World's tenth largest organization of executive search firms.

15

1 negotiations, like the parties in *E.E.O.C.*, *Mission Ins. Co.*, or *Amerada* did.  Thus, in this case,
2 defendant did not act in bad faith or file an anticipatory suit.
3 ///

**B.     Defendant did not forum shop.**

Plaintiff claims defendant's New York Action was an attempt at forum shopping.  Opp'n at 4:13-14, 16:6-9.  Plaintiff, however, merely uses the terms synonymously to describe defendant's allegedly anticipatory conduct, and its alleged customer-type claim, *see id.*, which issues are addressed in parts IV.A. and II, respectively.  Although no response is thus required, defendant notes its second office is in New York, Cook has its second-most important office in New York, and it is closer to the United Kingdom, than San Francisco is.  Reply at 7:13-22.  Defendant also believes all parties are subject to personal jurisdiction in New York, though it is uncertain as to California, where it believed plaintiff would deny personal jurisdiction exited.  *Id.* at 7:18-20.  And lastly, it notes plaintiff has not claimed the law of the Second Circuit law favors defendant.  *Id.* at 7:23-24.  Thus, it does not appear defendant engaged in forum shopping.

**C.     Convenience issues do not exempt this matter from the first-to-file rule.**

Plaintiff spends a great deal of time arguing it is not subject to personal jurisdiction in New York.  Plaintiff essentially claims it has no minimum contacts with New York.  Opp'n at 13:3-15:17.[10]  This Court will not address this argument, which is better left to the Southern District to address.  As the Ninth Circuit has stated:

> [N]ormally the forum non conveniens argument should be addressed to the court in the first-filed action.  Apprehension that the first court would fail to appropriately consider the convenience of the parties and the witnesses should not be a matter for our consideration.  [¶] .... [¶]  The court in the second-filed action is not required to

---

[10] The Court will note in passing, however, that plaintiff also claims it has the right to the mark, because Conex, a New York entity and plaintiff's agent and possibly shareholder or partner, used the mark before defendant did.  It also claims this right because Conex held and defended the mark exclusively for plaintiff.  And, Conex was, and now Cook is, plaintiff's exclusive American "shareholder" in plaintiff's "worldwide executive search consortium" offering "global search capabilities through proven and trusted *partners*."  What the Southern District of New York determines from all this shall be seen.

16

1         duplicate this inquiry although the convenience of the parties and witnesses may play

2         a part in the decision.

3 *Pacesetter*, 678 F.2d at 96-97 (citations omitted); *see Alltrade*, 946 F.2d at 628.

4     As a backup position, plaintiff claims "this Court need not resolve" this issue, but should

5 merely deny defendant's motion on the mere grounds plaintiff has raised it in the New York Action.

6 Opp'n at 3:4-28.  Rather clearly, this would defeat the purpose of the Ninth circuit's warning in

7 *Pacesetter* against giving into a party's apprehension.

8     This Court will, however, consider the convenience to the witnesses and the parties.  Plaintiff

9 argues California is more convenient, as defendant is headquartered in San Francisco, defendants

10 witnesses are "probably" there, its agreement with Conex is governed by California law, plaintiff

11 will not challenge personal jurisdiction or venue there, personal jurisdiction challenges in New York

12 could derail the New York Act on appeal, its witnesses are not in New York, and Conex can easily

13 cooperate with California discovery.  Opp'n at 11:3-23, 16:20-17:2.

14     In response, defendant first notes it chose New York, and requests some deference to its

15 forum selection.  Reply at 11:13-14.  As the Ninth Circuit has cautioned:

16     Declaratory relief is intended to serve a unique function in patent disputes,

17     eliminating multiple litigation and protecting competitors from infringement actions

18     that are threatened but not pursued.... Pacesetter's ... action multiplies litigation....

19     [and] attempts to remove ongoing litigation from the forum chosen by the plaintiff.

20  *Pacesetter*, 678 F.2d at 97.

21 Defendant's point is well taken.

22     Second, defendant observes plaintiff has never alleged New York is inconvenient for it or

23 that it would somehow be prejudiced by suit in New York.  Reply at 11:18-19.  Further, defendant

24 notes Conex, a critical witness, is in New York.  *Id.* at 12:2-5.  Likewise, Cook has its secondary

25 office in New York.  *Id.* at 12:6-9.  It also notes that even though the agreement with Conex is

26 governed by California law, this agreement is not at issue at all, in the New York Action, which is

27 distinct from the issue of whether Conex exceeded its authority as plaintiff's agent.  *Id.* at 12:10-15.

28 Defendant also argues if plaintiff were truly concerned with judicial economy, it would have first

17

successfully obtained a dismissal in New York, before filing in California. *Id.* at 12:21-23.

Based on these arguments, the Court finds plaintiff has failed to show any sufficient inconvenience to the parties or witnesses, which would favor California over New York, and defeat defendant's right to select its forum, especially where New York can apparently address all of plaintiff's claims and provide all parties with full and efficient relief.

### D.     The pace of the two matters, favors dismissing this one.

In *Church of Scientology*, 611 F.2d 738, 749-50, the Ninth Circuit established an exception to the first-to-file rule, where a second-filed matter has proceeded far beyond a first-filed matter, such that it becomes impractical to dismiss or stay the first-filed matter. In *Church of Scientology*, the second-filed matter went all the way through judgment on the merits, appeal, and remand, before the Ninth Circuit was able to address the motion to dismiss under the first-to-file rule, filed in the first matter. Here, the New York Action has proceeded to a motion to dismiss for lack of personal jurisdiction. While not much beyond where this matter is at, that motion is more substantial, and the New York Action appears to have a more developed case file, while this matter is little developed. Thus, this matter should be dismissed for the sake of judicial economy.

## V.     Dismissal is the appropriate remedy.

Dismissal is proper where the court of first filing provides adequate remedies. *Alltrade*, 946 F.2d at 627-28. If there are concerns regarding the availability of remedies in the court of first filing, or regarding its jurisdiction over claims which might implicate a statute of limitations if dismissed by that court, or if that court is preparing to transfer its matter to the court of second filing, then the court of second filing should consider a stay. *Id.* at 627-29. Plaintiff has not raised any of these issues here, in opposition to dismissal, so it is warranted.

## CONCLUSION

Accordingly, the Court GRANTS defendant Intersearch Group, Inc.'s Motion to Dismiss [Docket No. 5], and dismisses this matter without prejudice. The Clerk of Court is directed to close the case file and any pending matters related to it.

1  IT IS SO ORDERED.

   March 18, 2008                              _____
                                               Saundra Brown Armstrong
                                               United States District Judge